S10A0050. BOWIE v. THE STATE.
(692 SE2d 371)

HINES, Justice.

A jury found Philanders Lamont Bowie guilty of felony murder and cruelty to children in the first degree in connection with the beating death of his girlfriend's seventeen-month-old daughter, Makayla Valley. Following the denial of his motion for new trial, as amended, Bowie appeals his convictions, claiming that bad character evidence was improperly admitted and that his trial counsel provided ineffective assistance. For the reasons that follow, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. On July 6, 2005, Candace Jakes left Makayla in the care of Bowie, while she went to work. Nothing appeared to be wrong with Makayla at the time Jakes left for work; in fact, Jakes bathed and

---

[1] The crimes occurred on July 6, 2005. On June 18, 2008, a Clayton County grand jury indicted Bowie for malice murder, felony murder while in the commission of cruelty to children in the first degree, and cruelty to children in the first degree. Bowie was tried before a jury December 2-12, 2008, and was found guilty of felony murder and cruelty to children in the first degree; he was acquitted of malice murder. On December 12, 2008, Bowie was sentenced to life in prison for felony murder; the cruelty to children in the first degree merged for the purpose of sentencing. Trial counsel filed a motion for new trial on Bowie's behalf on January 6, 2009; new counsel filed amended motions for new trial on May 20, 2009 and on June 3, 2009. The motion for new trial, as amended, was denied on July 20, 2009. A notice of appeal was filed on July 24, 2009, and the case was docketed in this Court on September 9, 2009. The appeal was submitted for decision on November 2, 2009.

changed the child before she left and the baby acted normally and had no bruises on her body. Twice during her evening work shift, after 6:00 p.m. and after 8:00 p.m., Jakes telephoned her residence to check on Makayla; during the later call, Bowie told Jakes that "he was still playing a game" and that Makayla was "laying down" and was asleep. At approximately 10:00 p.m., Bowie telephoned 911 and reported that the baby "was throwing up and her stomach got bloated and she stopped breathing"; Bowie also told the 911 operator that "nobody is with me." Emergency responders found Makayla dead on the scene and badly bruised. The baby's belly was very "extended" and bruised, and the bruising was fresh. Bowie's responses to the responders' questions were "vague" and his demeanor was "cold." Later, Bowie admitted to police that he shook Makayla, that he picked her up in her "bouncy chair" and was "tossing her back and forth," and that he had "forcibly push[ed] her." He also acknowledged that he was "overly aggressive" in handling the child. The police investigation revealed a dent in the wall near the bed where Makayla was kept in her bouncy chair. Inside the dent was red paint, the same color as the red railings on the bouncy chair. Also, the stabilizer bar on the chair had a crusty white substance on it, consistent with the plaster on the dented wall. The autopsy on Makayla revealed that the baby had suffered internal bleeding, a torn liver, and significant impact to her skull; she died from the cumulative injuries. The medical examiner testified that Makayla's head might have been slammed on a table, chair, floor, or wall, and that she had received a severe beating, including blows from a fist.

1. The evidence was sufficient to enable a rational trier of fact to find Bowie guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Bowie contends that the trial court erred in admitting "bad character evidence" when it allowed the State to cross-examine an investigating detective about Jakes's statement in an interview that during an altercation with Bowie her thirteen-year-old brother had gotten a black eye. But, the contention is unavailing. The detective's interview with Jakes was videotaped, and the defense itself admitted into evidence a DVD of the interview, in which the statement at issue was made, and had it played for the jury. Thus, the defense clearly opened the door for cross-examination regarding the interview, including the statement about Bowie's prior violence in regard to Jakes's young brother. *Grant v. State*, 302 Ga. App. 661 (691 SE2d 581) (2010), citing *Pye v. State*, 269 Ga. 779, 788 (17) (505 SE2d 4) (1998); *Parker v. State*, 256 Ga. 543, 549 (7) (350 SE2d 570) (1986). Even arguendo, if permitting the questioning was error, it would

have to be deemed harmless, as the elicited testimony was merely cumulative of what was put before the jury by the defendant's own hand. *Flanders v. State*, 279 Ga. 35, 39 (7) (609 SE2d 346) (2005).

3. Bowie also contends that his trial counsel was ineffective because counsel withdrew the requested jury charge on voluntary manslaughter and because counsel introduced into evidence the DVD containing the account of the altercation with Jakes's brother. But, in order for Bowie to prevail on these claims of ineffectiveness, he must demonstrate a deficiency in trial counsel's performance and that the shown deficiency worked to his prejudice so that there is the reasonable probability that, but for counsel's errors, the outcome of his trial would have been different; furthermore, there is the strong presumption that counsel's actions fall within the range of professional conduct, which is broad. *Jarvis v. State*, 285 Ga. 787, 788 (2) (683 SE2d 606) (2009); *Wright v. State*, 285 Ga. 428, 434 (6) (677 SE2d 82) (2009). Bowie does not meet his burden.

(a) As to the withdrawal of the request to charge the jury on voluntary manslaughter as a lesser included offense, at the hearing on the motion for new trial, as amended, lead defense counsel testified that he withdrew such request because if the defense claimed voluntary manslaughter, Bowie would have been forced to admit the act of killing the little girl. Additionally, defense counsel did not believe that a jury would agree that a toddler crying was sufficient provocation for an adult to kill the child.

Indeed at trial, Bowie denied inflicting any injury on the child, much less the fatal harm. He testified that he noticed that the little girl had bruising in her stomach area at the time that she was left in his care, and that he panicked and telephoned 911 when he checked on her and "saw her eyes rolling in the back of her head." Thus, his defense would have been antithetical to a claim of voluntary manslaughter, i.e., that he killed the child but as the result of a sudden, violent, and irresistible passion resulting from serious provocation. OCGA § 16-5-2 (a);[2] *Finley v. State*, 286 Ga. 47, 49 (4) (a) (685 SE2d 258) (2009); *Jones v. State*, 263 Ga. 835, 839 (4) (439 SE2d 645) (1994). Therefore, Bowie cannot show that his trial counsel's tactical decision not to pursue the request for a jury instruction on voluntary

---

[2] OCGA § 16-5-2 (a) provides:

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

manslaughter was unreasonable. *Reid v. State*, 286 Ga. 484 (690 SE2d 177) (2010).

(b) Regarding the decision to play the DVD of Jakes's interview with police, trial counsel testified that he thought that the DVD could be used to impeach Jakes through prior inconsistent statements, and ultimately, that he believed that the trial court was going to allow the State to elicit evidence about Bowie's altercation with Jakes's brother, and consequently, he made the tactical decision "to throw the first punch." Thus, the decision to play the DVD was a strategic one, and Bowie has failed to show that no competent attorney, under similar circumstances, would have made it. *Davis v. State*, 286 Ga. 74, 78 (3) (686 SE2d 249) (2009). Even if counsel's performance was deficient in the manner urged, given the overwhelming evidence of Bowie's guilt, he cannot show that he was prejudiced thereby so that there was the reasonable probability that the result at his trial would have been different. *Bridges v. State*, 286 Ga. 535 (690 SE2d 136) (2010).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 29, 2010.

*Patricia F. Angeli*, for appellant.

*Tracy G. Lawson, District Attorney, Billy J. Dixon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.