## S10A1701. SMILEY v. THE STATE.
(706 SE2d 425)

HINES, Justice.

Following the denial of an amended motion for new trial, George Smiley appeals his conviction for malice murder in connection with the fatal shooting of Samuel Williams. Smiley's sole claim is that his trial counsel was ineffective. Finding the challenge to be without merit, we affirm.[1]

The evidence construed in favor of the verdict showed the following. Around 11:30 p.m. on September 1, 2006, Samuel Williams was found shot to death at an apartment complex in DeKalb County. Smiley had loaned a GMC Jimmy SUV that was owned by his mother and that he had been using, to his girlfriend, Sims. Sims was having problems with Williams, who was an ex-boyfriend and a former resident of the apartment complex. Earlier that day, Williams had smashed the windows on the Jimmy, and Sims told Smiley that Williams was the one who damaged the vehicle. Williams left the apartment complex; however, he returned between 10:00 p.m. and 11:00 p.m. with his girlfriend to retrieve belongings from his vacated apartment. When they arrived, a friend of Williams told him that "five dudes" were looking for him; the friend noticed that one of the men had a handgun. Williams walked around the apartment complex looking for the men. Shortly thereafter, Williams encountered Smiley, who confronted him about the broken SUV windows. Smiley fired three shots at the unarmed Williams, killing him. Williams sustained gunshot wounds to his forehead, his right hand, and to the back of his head. The forensic pathology indicated that Williams was shot as he raised his hand in an attempt to protect himself, a bullet

---

[1] The shooting occurred on September 1, 2006. On May 17, 2007, a DeKalb County grand jury indicted Smiley for malice murder, felony murder while in the commission of aggravated assault, and aggravated assault. He was tried before a jury October 22-25, 2007, and was found guilty of all charges. On October 25, 2007, Smiley was sentenced to life in prison for malice murder and a concurrent 20 years in prison for aggravated assault; the felony murder stood vacated by operation of law. Trial counsel filed a motion for new trial on Smiley's behalf on October 26, 2007, and new appointed appellate counsel filed an amended motion for new trial for Smiley on August 28, 2008. On April 28, 2010, the motion for new trial, as amended, was denied with the exception that the sentence for aggravated assault was effectively vacated as it was found to be merged with the malice murder for the purpose of sentencing. A notice of appeal was filed on May 26, 2010. The case was docketed in this Court for the September 2010 term, and the appeal was submitted for decision on briefs.

grazed his forehead, and he was shot in the back of the head as he turned his head; the shooter was standing more than two or three feet away.

On September 7, 2006, police went to Smiley's home to question him about the vandalism to the vehicle. Smiley voluntarily allowed the officers into the apartment and then agreed to go to police headquarters to give a statement. Smiley gave a four-page written statement in which he acknowledged that on the afternoon of the day of the murder, Sims told him that the victim had broken the vehicle's windows, that he was angry about it, and that he had gone to the apartment complex around 7:30 p.m. or 8:00 p.m. and stayed for about ten minutes; he stated that he then went to a barbecue at the home of his cousin, Kevin Williams, stayed there until about 1:45 a.m. and then went home. Immediately following this statement, the detective asked Smiley why he killed the victim, and Smiley denied that he had. But after the detective told Smiley his theory of what happened, Smiley admitted that he killed the victim, but claimed it was in self-defense. After Smiley was arrested and given his *Miranda*[2] rights, he made a second statement to the police in which he gave his version of the shooting, which included a physical altercation with the victim and Smiley's claim that when he pulled the handgun from his waistband, "shots just fired off"; however, during the statement Smiley changed his story, inconsistently claiming that someone else had shot the victim and denying any involvement in the killing.

1. The evidence was sufficient to enable any rational trier of fact to find Smiley guilty beyond a reasonable doubt of the malice murder of the victim. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Smiley contends that trial counsel's performance was ineffective in that counsel "failed to present evidence that would have led a reasonable juror to conclude that [Smiley] was at Kevin Williams'[s] barbecue at the time of the shooting." His claim that trial counsel performed deficiently is premised on two circumstances: at trial, Smiley's counsel called to the stand Kevin Williams, the man who hosted the barbecue the night of the murder, to testify as to Smiley's good character and as an alibi witness. During direct examination, trial counsel mistakenly referred to the night of the murder as August 30 rather than September 1, 2006. Smiley cites as additional deficient performance trial counsel's not calling other alibi witnesses.

In order to prevail on the claim of ineffectiveness of trial counsel,

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

Smiley must demonstrate that his attorney's performance was deficient, and that the deficiency was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To satisfy the first prong of the test, Smiley must overcome the strong presumption that his attorney's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment"; the second prong of the test requires that Smiley show there is a reasonable probability that, absent the demonstrated deficient performance, the result of his trial would have been different. *Shaw v. State*, 286 Ga. 229, 231 (2) (686 SE2d 760) (2009).

(a) As to the claim that trial counsel rendered ineffective assistance by confusing the date of the barbecue, counsel admittedly questioned Kevin Williams about the wrong date, i.e., August 30, 2006, rather than September 1, 2006, and Williams did not correct the error. However, the transcript of defense counsel's complete questioning of Williams and Williams's responsive testimony makes clear that both were operating under the premise that the event of the barbecue took place on the day of the murder, which was unquestionably September 1, 2006. Therefore, there can be no doubt that the jury was aware that Kevin Williams was testifying in an attempt to establish an alibi for Smiley.

Even assuming arguendo that trial counsel's misstatement of the date constituted a deficiency for the purpose of the contention of ineffectiveness, that is not the end of the inquiry; the remaining question is the existence of prejudice to Smiley. Id. And, under the *Strickland* standard, it cannot be credibly maintained that there was a reasonable probability that, but for counsel's mistake, the outcome of Smiley's trial would have been different. As noted, it was plain that Kevin Williams was testifying about the night of the murder. Furthermore, Kevin Williams's testimony fell well short of establishing an alibi for Smiley for other reasons. While Williams initially did testify that Smiley was at his barbecue from 9:00 p.m. to 1:45 a.m., Williams subsequently admitted that he had been drinking alcohol at the event, that he could not account for all the time that Smiley was there because of the number of people present, that it was an "in-and-out sort of thing," and that it was possible that Smiley could have left the barbecue and returned without his knowledge.

(b) Smiley's further claim that trial counsel was deficient for failing to call additional witnesses is likewise unavailing. The focus of the claim is trial counsel's not calling Michael McMurtry or Shariff Ali to testify for the defense in order to establish the alleged alibi.

At the hearing on the motion for new trial as amended, trial counsel testified that he decided not to present the other witnesses

because he thought that they would not "stand up well to cross-examination," that the jury would perceive variances in the testimony, that he was worried about credibility issues, and that he thought Smiley's "best chance" at establishing an alibi was with "one good clean witness," i.e., Kevin Williams. In fact, counsel further testified that he indeed knew Michael McMurtry because at the time he was Smiley's counsel, he was also representing McMurtry on a drug charge.

The decision of which witnesses to call is a tactical one within the exclusive province of the attorney after consultation with the client, and Smiley has failed to overcome the strong presumption that his attorney's tactical decision to forego putting the subject witnesses on the stand was within the broad range of reasonable professional conduct. *Reid v. State*, 286 Ga. 484, 486 (3) (a) (690 SE2d 177) (2010).

Smiley has failed to meet his burden of demonstrating the ineffectiveness of his trial counsel.

*Judgments affirmed. All the Justices concur.*

## DECIDED FEBRUARY 28, 2011.

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Daniel J. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary K. Ware, Assistant Attorney General*, for appellee.