## S12A0327. MARTIN v. THE STATE.
(725 SE2d 313)

MELTON, Justice.

Following a jury trial, Kevin Ian Martin appeals his conviction for felony murder, aggravated assault, and possession of a knife during the commission of a crime, contending, among other things, that the trial court admitted improper evidence and that he received ineffective assistance of counsel.[1] For the reasons set forth below, we affirm.

In the light most favorable to the verdict, the record shows that, on New Year's Eve 2008, Martin went to a party at a neighbor's home. During the party, Martin had an argument with Peter Mwangi after Mwangi instructed him to close a door to prevent cold air from coming inside the house. At that point, Martin and Mwangi confronted each other, but were prevented from fighting by Eric Wachira and Martin's brother, David. About an hour later, Christine Njoki Kamau and Mwangi were outside trying to de-ice Kamau's windshield so she could go home. Martin then approached, and he began arguing with Mwangi again. After that, Martin walked to his car, leaned inside, and retrieved a knife. Martin pursued Mwangi, who began backing away with his hands up. Mwangi swung his fists at Martin, and Martin swung back and stabbed him. They fell to the ground and continued fighting. Martin dropped the knife, which appeared to be eight to ten inches long. Wachira witnessed the fight as it occurred, and he saw that Martin was wielding a knife while Mwangi remained unarmed. After the fight, David picked up the knife and returned it to Martin. Martin walked to his home after moving his car across the street. Mwangi had massive blood loss from two stab wounds in his right chest, and he died at the hospital after undergoing surgery. Martin was taken into custody at his home after the altercation. A search of Martin's home revealed two knives

---

[1] On December 11, 2009, Martin was indicted for malice murder, felony murder, aggravated assault, and possession of a knife during the commission of a crime. Following a jury trial beginning on October 22, 2010, Martin was convicted for felony murder, aggravated assault, and possession of a knife, and he was sentenced to life imprisonment for felony murder and five consecutive years for possession of a knife. His conviction for aggravated assault was merged with his conviction for felony murder. On November 1, 2010, Martin filed a motion for new trial, and he amended it on April 11, 2011. The motion for new trial was denied on May 6, 2011. Martin timely filed a notice of appeal, and his case was docketed to the January 2012 term of this Court and submitted for decision on the briefs.

concealed in a bag of fertilizer; however, there was no blood found on either knife.

This evidence was sufficient to enable the jury to find Martin guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Martin contends that his trial counsel rendered ineffective assistance by introducing into evidence Martin's videotaped statement to police without first redacting portions where (a) Martin invoked his right to counsel and (b) Martin asked God to have mercy on his soul.

> In order to succeed on his claim of ineffective assistance, [Martin] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Lytle v. State*, 290 Ga. 177, 180 (4) (718 SE2d 296) (2011).

The record shows that, following the stabbing, police picked Martin up and took him to police headquarters for videotaped questioning. At the beginning of this questioning, Martin did not know that Mwangi was dead. Martin maintained that Mwangi started the fight and that he was just defending himself. Eventually, Martin stated that, although he had nothing to hide, he wished to speak to counsel. At that point, the interviewing officer left the room, returned to tell Martin that, because Mwangi had died, Martin was going to be arrested for murder, and then left again. After the officer left, Martin began pleading to God to have mercy on his soul. At trial, Martin's counsel played the majority of the videotape, including both of these portions, for the jury.

(a) Contrary to Martin's arguments otherwise, evidence of a defendant's invocation of the right to counsel is not automatically inadmissible as an improper comment on a defendant's right to remain silent. "[A]dmission of the videotape ending with [Martin's]

request for an attorney did not amount to an improper comment on his right to remain silent warranting the reversal of his conviction." (Citation and footnote omitted.) *Rowe v. State*, 276 Ga. 800, 805 (4) (582 SE2d 119) (2003).

> [T]he videotape merely shows that [Martin] invoked his right to an attorney after giving a lengthy statement to police, and that the interview was then properly termi- nated. It did not purport to be evidence of [Martin's] guilt nor was it directed to undermining any of his defenses.

(Citation omitted.) Id. Martin's request for an attorney did not negatively point directly at the substance of Martin's claim of self-defense or otherwise substantially prejudice Martin. See *Ben- ham v. State*, 259 Ga. 249, 249-250 (2) (379 SE2d 506) (1989) ("To reverse a conviction the evidence of the defendant's election to remain silent must point directly at the substance of defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury") (citation and punctuation omitted). Because Martin's invocation of his right to counsel was not inadmissible, as Martin now contends, his argument that he received ineffective assistance of counsel premised on this inadmissibility lacks merit. Moreover, trial counsel's decision to play the entire tape was strate- gic. Trial counsel testified that, prior to Martin's invocation of counsel, the tape had to be stopped and started again numerous times. Trial counsel did not want the jury to suspect that he was trying to hide parts of the interview, and, in any event, he saw no harm in allowing the jurors to witness the invocation of counsel.

(b) Martin also contends that his trial counsel was ineffective by allowing the jurors to view the portion of the videotape in which Martin pleads to God for mercy. At the motion for new trial hearing, trial counsel testified that his decision in this regard was strategic. He thought that portion of the tape "would be good for the jury to see because [Martin] appeared very remorseful. He got on the ground and was praying and crying . . . and that was one of the primary reasons that I wanted to play it because that humanizes a person, and we certainly wanted to do that." Martin's attorney felt that Martin's reaction would solidify his argument that Martin acted only to protect himself and was extremely unhappy that he had been forced to harm Mwangi. The trial court did not abuse its discretion in finding that this strategy was reasonable and that trial counsel had not been ineffective. See *Lytle*, supra, 290 Ga. at 180 (4).

2. Martin contends that the trial court erred by truncating his testimony that he was actually afraid of Mwangi and only acting in self-defense. During trial, Martin testified, and, at one point, trial

counsel asked Martin about his feelings during the encounter with Mwangi. After testifying that he was mortally afraid of Mwangi, that Mwangi was the aggressor, and that Martin believed Mwangi was trying to kill him, trial counsel began questioning Martin about how he currently felt about things. Martin expressed remorse and began to recount something that he had told his "church sister." The trial court then interjected and told trial counsel that she had gone far afield and that testimony regarding what Martin told his "church sister" was irrelevant. Thereafter, trial counsel chose to change her line of questioning altogether, apparently agreeing with the trial court's assessment.

Martin now contends that the trial court's action impinged on his constitutional rights by preventing him from adequately presenting his justification defense. As an initial matter, Martin acquiesced in the trial court's ruling, thereby waiving his right to raise this issue on appeal. See *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997) ("A party may not complain on appeal of a ruling that he contributed to or acquiesced in by his own action, trial strategy, or conduct. [Cit.]"). Moreover, even if the argument were preserved, it would still lack merit. Martin was not stopped from telling the jury that he was afraid of Mwangi. He did so repeatedly. It was when Martin subsequently began to testify about what he said to his "church sister" about his feelings long after the stabbing that the trial court stopped his testimony as irrelevant. Therefore, there was no error, and, in any event, the harm that Martin claims is belied by the record.

3. Martin contends that the trial court erred by not reading aloud to the jurors two stipulations agreed upon by the parties: (1) no blood was found on the knives discovered in Martin's trash; and (2) Mwangi had alcohol in his blood at the time of his death. The record shows that the trial court instructed the jury that "[s]tipulations . . . are facts that both sides agree to be true and you'll find some documents — when you take all this stuff out with you to deliberate, you'll find two documents that contain stipulations." Therefore, the jury was both given the written stipulations and instructed as to their significance. In addition, Martin argued the content of the stipulations to the jury. Accordingly, there is no evidence whatsoever to support Martin's contention that he was harmed by the fact that the trial court did not read the stipulations out loud before giving them to the jury for consideration.

4. Martin argues that the trial court erred by failing to suppress his statement to an arresting officer that he had consumed seven alcoholic beverages on the night of the murder, contending that the statement was the result of custodial interrogation without a prior recitation of his *Miranda* rights. Under the facts of this case, we find

any error that may have occurred to be harmless.

The record shows that Officer Marlin Adams went to Martin's house after the stabbing, placed Martin on the ground, handcuffed him, and placed him under arrest. Officer Adams then asked Martin generally what he was doing "carrying on" at 5:00 in the morning. Martin responded that "he stabbed me so I stabbed him back." Officer Adams then noticed that Martin had a strong odor of alcoholic beverage on him, and he asked Martin how much he had to drink that night. Martin responded that he had seven drinks.[2] At trial, this statement was admitted over Martin's objection that the statement had not been preceded by a reading of his *Miranda* rights.[3] The trial court reasoned that Officer Adams was not investigating a crime but was, instead, merely trying to ascertain Martin's condition. As a result, the trial court found that, while Martin was in custody, Officer Adams' questioning did not amount to an interrogation triggering *Miranda*.

Pretermitting the propriety of this ruling, Martin has not shown that he was harmed by the evidence that he had been drinking on the night in question. Martin argues that his statement undercut his defense because it must have led the jury to believe that he was drunk and aggressive at the time of the stabbing. The record does not support this broad generalization. To the contrary, Officer Adams testified that, when he was arresting Martin, Martin was steady on his feet and not slurring his words. In addition, prior to Officer Adams' testimony, Martin's brother testified that Martin had been drinking during the party and had attended another party prior to the one in question. Therefore, evidence that Martin had been drinking prior to the stabbing was already before the jury. There was no reversible error under these specific facts. See, e.g., *Phillips v. State*, 285 Ga. 213 (2) (675 SE2d 1) (2009); *Cox v. State*, 274 Ga. 204 (2) (553 SE2d 152) (2001).

5. In connection with his argument that the trial court improperly admitted his statement about drinking at the party, Martin contends that the trial court also erred by not instructing the jury regarding *Miranda* and the voluntariness of statements. For the reasons set forth in Division 4, supra, any such error, if it occurred, was harmless under the facts of this case.

*Judgment affirmed. All the Justices concur.*

---

[2] On direct examination, Martin testified that he did not remember giving a statement at the time that he was taken into custody. He specifically testified that he did not recall saying that he had consumed seven alcoholic beverages.

[3] Martin takes no issue with the admissibility of his first statement regarding the stabbing. He did not file a previous motion to suppress the statement regarding his drinking.

DECIDED APRIL 24, 2012.

*Bernard S. Brody*, for appellant.

*Patrick H. Head, District Attorney, John R. Edwards, Amelia G. Pray, Henry R. Thompson, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.