S13A0292. WILLIAMS v. THE STATE.
(742 SE2d 445)

BLACKWELL, Justice.

Taron Maurice Williams was tried by a Chatham County jury and convicted of the murder of Aljene Flannings and other crimes related to the unlawful possession of a firearm. Following the denial of his motion for new trial, Williams appeals, contending that the trial court erred when it limited his cross-examination of a prosecution witness about another case in which the witness had been charged with armed robbery but had been allowed to plead guilty to a lesser

included offense. Williams also claims that he was denied the effective assistance of counsel. Having reviewed the briefs and record, we find no error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that on the afternoon of November 27, 2009, Flannings repeatedly contacted Williams about a debt that Williams owed to Flannings, and Flannings asked Marcus Black to drive Flannings to a public housing project. When they arrived, Flannings exited the vehicle, spotted Williams, and walked up to meet him. After a short conversation, Williams handed Flannings some money and then shot him, once in the neck and twice in the head. Flannings died as a result of his wounds. Williams fled, and Black drove away and called 911. Within minutes, Williams called Elton Cheru and told Cheru that he and Flannings had gotten into an altercation. And in another phone call later that evening, Williams told Cheru that he shot Flannings because Flannings "came towards him with aggression." The police interviewed Black and searched his person and his vehicle but found nothing that incriminated him. When police interviewed Williams, he admitted that he had talked with, and given money to, Flannings just before Flannings was shot, but Williams said that the shooter was an unknown third party. Although Williams does not dispute that the evidence is sufficient to sustain his convictions, we have independently reviewed the record, and we conclude that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Williams was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Brown v. State*, 291 Ga. 892, 894 (1) (734 SE2d 23) (2012); *Milinavicius v. State*, 290 Ga. 374, 376 (1) (721 SE2d 843) (2012).

---

[1] The events that form the basis for the convictions occurred on November 27, 2009. Williams was indicted on May 5, 2010 and charged with malice murder, two counts each of felony murder and aggravated assault, three counts of possession of a firearm during the commission of a crime, and one count of possession of a firearm while on probation as a first offender for a forcible felony. Trial commenced on April 26, 2011, and the jury returned its verdict on April 29, 2011, finding Williams guilty on all counts. Williams was sentenced to imprisonment for life without parole for malice murder, a consecutive term of imprisonment for five years for possession of a firearm during the commission of a crime, and a concurrent term of imprisonment for five years for possession of a firearm while on probation as a first offender for a forcible felony. The verdicts as to felony murder were vacated by operation of law, *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the remaining counts merged with the crimes for which Williams was sentenced. Williams filed a motion for new trial on May 3, 2011, amended it on December 5, 2011, and amended it again on April 9, 2012. The trial court denied the motion on July 30, 2012. Williams timely filed his notice of appeal on August 28, 2012, and the case was docketed in this Court for the January 2013 term and submitted for decision on the briefs.

2. We next consider whether the trial court erred when it limited the cross-examination of Cheru as to a case in which Cheru originally had been charged with armed robbery and had faced a mandatory sentence of life without parole, but in which Cheru ultimately was allowed to plead guilty to aggravated assault instead. The trial court admitted the conviction for aggravated assault but would not allow Williams to cross-examine Cheru about the sentence he might have received for armed robbery. "[D]efense counsel is entitled to a reasonable cross-examination on the relevant issue of whether a witness entertained any belief of personal benefit from testifying favorably for the prosecution." *Manley v. State*, 287 Ga. 338, 340 (2) (698 SE2d 301) (2010) (citation and punctuation omitted). Accordingly, a defendant must be permitted to cross-examine a witness for the State about a charge that was pending either at the time the witness gave a statement or at the time of trial. See id. at 346 (5). See also *Hibbs v. State*, 299 Ga. App. 723, 724-727 (2) (683 SE2d 329) (2009); *George v. State*, 276 Ga. 564, 565 (4) (580 SE2d 238) (2003). But no charges were pending against Cheru either at the time of his interview or at the time of trial that might have led Cheru to offer evidence against Williams to curry favor with the State.[2] See *Bosnak v. State*, 263 Ga. App. 313, 315 (2) (587 SE2d 814) (2003).

Moreover, even if no charges were pending against a witness when he was interviewed or testified, a defendant must be allowed to cross-examine a witness about punishment that the witness may have avoided as a result of a deal with the State for his testimony in the prosecution of the defendant. See *State v. Vogleson*, 275 Ga. 637, 639-640 (1) (571 SE2d 752) (2002) ("the trial court abused its discretion when it did not permit defense counsel to question a witness who is testifying for the State in exchange for a reduction in prison time about the witness's belief concerning the amount of prison time he is avoiding by testifying against the defendant") (citations omitted). Here, however, Cheru said that no one made any promises to him for testifying against Williams. And Williams presented no evidence of any deal or potential deal between Cheru and the State for his statement or testimony.[3] See *Wright v. State*, 266 Ga. 887, 889 (2) (471

---

[2] Although the crime with which Cheru was charged occurred a few days before the murder of Flannings, Cheru was interviewed about the murder a month before he was charged with armed robbery, and Cheru was not questioned during that interview about the alleged armed robbery. He pled guilty to aggravated assault several months before the trial in this case.

[3] Indeed, the transcript of the proceeding in which Cheru entered a negotiated guilty plea shows that the prosecutor entered a plea agreement with Cheru based on his inability to locate one victim and his conversations with the other victim.

SE2d 883) (1996); *Sapp v. State*, 263 Ga. App. 122, 123-124 (587 SE2d 267) (2003).

The trial court did not cut off all inquiry into the potential bias of Cheru, but rather allowed the cross-examination to proceed unfettered with the exception of an inquiry into the penalty that Cheru might have received for armed robbery. See *Bosnak*, 263 Ga. App. at 315 (2). "The right of cross-examination integral to the Sixth Amendment right of confrontation is not an absolute right that mandates unlimited questioning by the defense." Id. We see no abuse of discretion in the limitation of the cross-examination of Cheru. *Hodo v. State*, 272 Ga. 272, 275 (4) (528 SE2d 250) (2000). See also *Bosnak*, 263 Ga. App. at 315 (2).

3. Last, we consider the contention that Williams was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance, Williams must prove both that the performance of his lawyers was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To show that the performance of his lawyers was deficient, Williams must prove that they performed their duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to show that he was prejudiced by the performance of his lawyers, Williams must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). See also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden, though not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C). We conclude that Williams has failed to carry his burden.

(a) Williams claims that his lawyers were ineffective because they failed to object to hearsay testimony about the contents of certain cell phone records and a 911 call log. According to Williams, his lawyers should have challenged this testimony because it corroborated testimony given by Black and Cheru, contradicted a statement that Williams had given, and was consistent with the prosecution theory of the case. But at the hearing on the motion for new trial, one of the lawyers explained that the phone records were not altogether bad for Williams. Those records, the lawyer said, tied Cheru to the murder scene and to Flannings and supported the defense theory that Cheru knew where Flannings was going. Moreover, the lawyer explained, the very short length of the calls was inconsistent with the

prosecution theory of a verbal altercation between Flannings and Williams, and the records tended to show that Cheru or Black had the motive and opportunity to shoot Flannings and pin the murder on Williams. As for the 911 call log, the lawyers decided not to object to the testimony about it because they desired to impress upon the jury that they were not hiding evidence, especially the evidence that Black called 911 within a very few minutes of the shooting and did not wait half an hour as one of the lawyers inadvertently misrepresented in her opening statement.

As to deficient performance, the first element of ineffective assistance, the United States Supreme Court has explained that we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U. S. at 689 (III) (A) (citation and punctuation omitted). Having reviewed the record, we conclude that the decision of Williams's trial lawyers not to object to the testimony about the phone records — based on the lawyers' analysis of the consistency of those records with the respective theories of the State and the defense — was a trial strategy that a reasonable lawyer might have pursued. See *Sims v. State*, 278 Ga. 587, 590 (3) (a) (604 SE2d 799) (2004). "The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. The fact that present counsel would pursue a different strategy does not render trial counsel's strategy unreasonable." Id. (citations and punctuation omitted). Likewise, the decision to forego an objection to the testimony about the 911 call log so as to rebuild credibility with the jury and avoid any appearance of hiding evidence falls within the wide range of reasonable professional conduct. See *Martin v. State*, 290 Ga. 901, 903 (1) (a) (725 SE2d 313) (2012); *Kendrick v. State*, 287 Ga. 676, 682 (4) (699 SE2d 302) (2010). And even if the performance of Williams's lawyers was deficient when they failed to object to the testimony about the cell phone records or the 911 call log, Williams has not shown that he was prejudiced as a result. These records were cumulative of other testimony to a large extent and were cumulative as well of the previously admitted 911 call by Black, which included the time it was received. And the more significant dispute than the timing and number of calls "concerned the substance of [the] conversations, which the phone records [and call log] did not reflect." *Carrie v. State*, 298 Ga. App. 55, 61 (4) (679 SE2d 30) (2009) (citation omitted).

(b) Williams separately complains that one of his lawyers misstated in opening statement that Black waited "half an hour" before

calling 911. But it is undisputed that there was no intention to mislead the jury, and the misstatement was corrected when a detective testified about the 911 call log. See *Morey v. State*, 312 Ga. App. 678, 690-691 (5) (a) (719 SE2d 504) (2011); *Florence v. State*, 246 Ga. App. 479, 481-482 (8) (539 SE2d 901) (2000). In closing argument, the lawyer explained that some occurrences during trial were surprising and that it was not her intention to trick or deceive the jury. As the prosecutor himself explained, the reference to "half an hour" came from the time from the 911 call until the police began to interview Black. And the evidence that Black called 911 with no more than slight delay had little, if any, effect on the plausibility of the defense theory that Black participated in framing Williams. See *Smiley v. State*, 288 Ga. 635, 637 (2) (a) (706 SE2d 425) (2011). Moreover, the prejudicial effect, if any, resulting from the inconsistency between the evidence and the misstatement was mitigated by the trial court charging the jury that what the lawyers say in opening statement "is not evidence" but "is intended to be a preview or an outline of what they expect the evidence to be." See *Jarvis v. State*, 285 Ga. 787, 789 (2) (a) (683 SE2d 606) (2009); *Jackson v. State*, 306 Ga. App. 33, 39 (2) (c) (701 SE2d 481) (2010). Accordingly, Williams has not shown a reasonable probability that the outcome of the trial would have been different if the lawyer had not made the misstatement in her opening statement. See *Smiley*, 288 Ga. at 637 (2) (a); *Muller v. State*, 284 Ga. 70, 73 (3) (663 SE2d 206) (2008); *Jackson*, 306 Ga. App. at 39 (2) (c).

(c) Williams also asserts that his trial lawyers were ineffective because they failed to object to Black's out-of-court statement, which concerned Flannings's phone calls, Black giving Flannings a ride, and Black witnessing the shooting, among other things. According to Williams, that statement was not admissible as a prior consistent statement, and it served only to bolster Black's damaging trial testimony. Under our old Evidence Code, "[a] witness's prior consistent statement is admissible if the veracity of the witness's trial testimony has been placed in issue at trial, the witness is present at trial, and the witness is available for cross-examination."[4] *Kidd v. State*, 292 Ga. 259, 260 (2) (736 SE2d 377) (2013) (citations omitted). "A witness's veracity is placed in issue if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination. For the prior consistent statement to be admiss-

---

[4] Because this case was tried before January 1, 2013, our new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214, § 101. As to the admissibility of prior consistent statements under the new Evidence Code, see OCGA §§ 24-6-613 (c) and 24-8-801 (d) (1) (A).

ible, it must also predate the alleged fabrication, improper influence, or improper motive." Id. (citations and punctuation omitted).

Williams argues that the cross-examination of Black did not include any charge of an improper motive, improper influence, or recent fabrication that the out-of-court statement predated. One of Williams's lawyers, however, elicited testimony from Black that he was parked right next to the curb but had told the detective that he parked about six to eight car lengths away. Black was then asked, "So which is it? Is it right next to the curb or is it six to eight car lengths away?" And he answered, "I was right next to the curb." Although Black was not directly accused of lying, his veracity was affirmatively attacked by these questions eliciting inconsistencies between his testimony at trial and his previous statement. See *Hall v. State*, 287 Ga. 755, 758 (3) (699 SE2d 321) (2010). The "cross-examination of [Black] strongly implied that [his] direct testimony constituted a recent fabrication. Additionally, it is undisputed that [his] statement to the [detective] predated [his] allegedly fabricated trial testimony." *Mims v. State*, 314 Ga. App. 170, 173 (1) (723 SE2d 486) (2012) (footnotes omitted). See also *Kidd*, 292 Ga. at 260 (2) ("Defense counsel's questions implied that [witness's] trial testimony was recently fabricated."); *Stephens v. State*, 289 Ga. 758, 759 (1) (a) (716 SE2d 154) (2011) (prior consistent statements are admissible to rebut an "express or implied" charge of recent fabrication). "Accordingly, because the trial court did not err by allowing the State to introduce [Black's] prior consistent statement[ ], [Williams's] trial counsel did not perform deficiently by failing to make a meritless objection to the admission of this evidence." *Williams v. State*, 289 Ga. 672, 674 (2) (715 SE2d 76) (2011) (citation omitted). And in any event, the lawyers made a reasonable strategic decision to instead use that statement to impeach Black during cross-examination based on several inconsistencies between the statement and Black's testimony at trial. See *Bowie v. State*, 286 Ga. 880, 883 (3) (b) (692 SE2d 371) (2010); *Stanley v. State*, 283 Ga. 36, 41 (2) (c) (656 SE2d 806) (2008).

For similar reasons, we disagree with the assertion that the lawyers were ineffective when one requested that Cheru's entire out-of-court statement be played for the jury even though it bolstered Cheru's trial testimony. At the motion for new trial hearing, the lawyer testified that he requested the statement be played because Cheru had said that it was forced by detectives, and there were numerous inconsistencies between the prior statement and Cheru's testimony. In addition, Williams's lawyers were able to cross-examine

Cheru about certain matters mentioned in his prior statement that were favorable to Williams but not brought out on direct examination. Moreover, the portion of Cheru's statement most unfavorable to Williams had already been played at the State's request as an inconsistent statement, and its harmful effect was arguably diluted by playing the entire recording. So, the request to play Cheru's entire prior statement was a matter of trial strategy and tactics that Williams has not shown to be so unreasonable that no competent lawyer would have made such a request. See *Nations v. State*, 290 Ga. 39, 43 (4) (b) (717 SE2d 634) (2011) ("counsel's testimony . . . makes plain that the defense wished the jury to view [the witness's] statement"); *Bowie v. State*, 286 Ga. at 883 (3) (b) (strategic decision to play DVD of witness's interview that could be used to impeach the witness); *Stanley*, 283 Ga. at 41 (2) (c) (strategy was to put witness's statement into evidence so that the jury could see the inconsistencies between it and his testimony in court).

(d) Williams further contends that his trial lawyers were ineffective because they failed to object when the prosecutor began questioning the lead detective, "So once you found out that Mr. Black had not fired a gun . . . ." A crime lab report on a gunshot residue test of swabs of Black's hands had just been admitted into evidence by stipulation of the parties. The report stated that the test results were negative but did "not eliminate the possibility that [Black had] discharged a firearm . . . ." One of Williams's lawyers testified that her strategy was to follow up on the State's question to make clear during cross-examination that the test results did not show conclusively whether Black had fired a gun. On cross-examination, she did read the statement from the report that the test results did "not eliminate the possibility that [Black had] discharged a firearm," although she also agreed to let the evidence speak for itself and not to read the entire report. The tactical decision of Williams's lawyers "not to object, but instead to comment on the misrepresented statement when given the next opportunity, was not [so] patently unreasonable" that no competent lawyer would have made the same decision. *Lopez-Jimenez v. State*, 317 Ga. App. 868, 872 (2) (a) (733 SE2d 42) (2012).

(e) Williams claims that his trial lawyers were ineffective because they failed to make the right arguments to convince the trial court to permit them to impeach Cheru with his prior felony convictions for entering an auto and possession of marijuana.[5] As we understand

---

[5] Former OCGA § 24-9-84.1 (a) (1) provided that
[f]or the purpose of attacking the credibility of a witness, . . . [e]vidence that a

Williams, he contends that his lawyers should have argued the admissibility of those convictions based on the following general principles as set forth in a leading evidence treatise:

> The probative value of a prior conviction for its impeachment use is based on the principle that a person who has committed a serious crime in the past is less likely than the average citizen to respect the legal obligation to testify truthfully and is more likely to ignore the oath and succumb to any temptation to lie on the witness stand. . . . A non-party witness typically suffers little or no prejudice from impeachment by prior conviction (other than embarrassment) because a non-party typically has no financial or liberty stake in the outcome of the trial.

Paul S. Milich, Ga. Rules of Evidence § 14:4. But as the trial court found, essentially the same argument had been made by a prosecuting attorney in an earlier attempt to admit certain prior convictions of a defense witness in this case, but the court rejected the argument. And even if Williams's trial lawyers had made further argument as to why the probative value of the two convictions outweighed their prejudicial effect, our review of the record shows that the trial court would not have abused its discretion by excluding those convictions. See *Smith v. State*, 319 Ga. App. 164, 166-168 (2) (735 SE2d 153) (2012). Because Williams has failed to establish that the convictions would have been admitted, he has not shown that his lawyers were ineffective. See *Shaw v. State*, 286 Ga. 229, 233 (2) (686 SE2d 760) (2009); *Parks v. State*, 304 Ga. App. 175, 181 (5) (b) (695 SE2d 704) (2010).

Moreover, the trial court did admit Cheru's more serious convictions for aggravated assault and forgery, the latter of which directly called into question his truthfulness and veracity. See *Damerow v. State*, 310 Ga. App. 530, 534 (3) (714 SE2d 82) (2011). Cheru testified that he was in state prison, and he wore a jail uniform, handcuffs, and leg irons at trial. *Totten v. State*, 276 Ga. 199, 201-202 (4) (577 SE2d 272) (2003). So, the jury was fully aware of Cheru's disreputable character, and there is no reasonable probability that the outcome of

---

witness has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the witness was convicted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the witness . . . .

As to impeachment by prior convictions under the new Evidence Code, see OCGA § 24-6-609 (a) (1).

the trial would have been different if his prior convictions for entering an auto and possession of marijuana had been admitted. See *Ross v. State*, 231 Ga. App. 793, 798 (6) (499 SE2d 642) (1998).

(f) Williams further asserts that his trial lawyers were ineffective in that they failed to request a charge on self-defense even though Cheru's testimony was sufficient to support such a charge. But one of Williams's lawyers testified that she did not request a self-defense instruction because it was inconsistent with the defense theory that Williams approved — that Cheru or Black killed Flannings — as discussed above in Division 3 (a). A self-defense theory also was inconsistent with Williams's own statement to police. "[R]eliance on that defense would have required [Williams's] attorneys to argue that the victim was the initial aggressor and to risk alienating the jury if it had become sympathetic towards the victim." *Muller v. State*, 284 Ga. 70, 72 (3) (663 SE2d 206) (2008) (also stating that "[g]iven all the evidence in this case, presenting both justification and the lack of intent defense simultaneously could certainly backfire."). "Because defense counsel is entitled to base the defense on the veracity of the client's assertions, and because the requested instructions were inconsistent with [Williams's] claims, it was reasonable for counsel not to request the charges in question." *Savior v. State*, 284 Ga. 488, 493 (4) (668 SE2d 695) (2008) (punctuation and footnotes omitted).

(g) Williams also contends that his trial lawyers were ineffective when they failed to recall Cheru to impeach him as to an alleged deal with the State in his armed robbery case. Williams argues that, after the trial court limited his cross-examination of Cheru as discussed above in Division 2, the court did allow Williams to call the detective who had investigated Cheru's armed robbery case, and the testimony of this detective laid a foundation, Williams claims, to impeach Cheru as to an alleged deal. The detective testified that a few days before the murder, the alleged armed robbery occurred and Cheru left him a voice mail claiming to be a victim, but the detective did not provide evidence of any deal. So even after the detective testified, there was still no evidence of any pending charges against Cheru at the time of his interview or at the time of trial or of any deal between him and the State in exchange for his statement or testimony. In addition, one of Williams's trial lawyers testified that he made the strategic decision not to recall Cheru, who was a problem witness for both sides, for fear that he would give unexpected, inconsistent, and harmful testimony. In light of the risk of recalling Cheru, it cannot be said that no competent lawyer would have made the same strategic decision. See *Jarvis*, 285 Ga. at 790 (2) (b). Moreover, even if the failure of Williams's lawyers to recall Cheru "fell outside the wide range of reasonable professional assistance, we note that [he] was not called

to testify in the motion for new trial hearing. Without [his] testimony, we cannot say that there is a reasonable probability that the outcome of the proceedings might have been different." *Ward v. State,* 274 Ga. App. 511, 516 (4) (b) (618 SE2d 154) (2005) (punctuation and footnote omitted). See also *Cartwright v. State,* 291 Ga. 498, 500 (2) (b) (731 SE2d 353) (2012).

(h) Williams claims that his trial lawyers were ineffective because they called an alibi witness who was impeached by prior convictions and by his friendship with Williams and whose testimony was not consistent with Williams's statement to police. The decision to call a defense witness is a matter of trial strategy and tactics within the province of the lawyer after consultation with the client. *Reid v. State,* 286 Ga. 484, 486 (3) (a) (690 SE2d 177) (2010); *Watkins v. State,* 285 Ga. 355, 358 (2) (676 SE2d 196) (2009). Williams's lawyers did consult with Williams about calling the witness. See *Browne v. State,* 261 Ga. App. 648, 649 (2) (583 SE2d 496) (2003). And one of the lawyers testified that they felt that the credibility issues of the witness were outweighed by his favorable testimony that he was present in the area when the gunshots were fired and that Williams could not possibly have committed the offense. In light of the damaging evidence against Williams, it is not a ground for reversal that his lawyers made a strategic decision that the positive aspects of the evidence would outweigh the negative, "and the fact that [Williams], in hindsight, now questions the efficacy of the chosen defense strategy cannot establish ineffective assistance." *Chapman v. State,* 318 Ga. App. 514, 519-520 (1) (e) (733 SE2d 848) (2012) (footnotes omitted).

(i) Finally, Williams complains that, once his lawyers believed that he intended to testify at the sentencing hearing in an inappropriate manner notwithstanding their advice to the contrary, they failed to seek the trial court's assistance to explain to Williams the limited purpose of that hearing and the options available to the court at that time. But decisions with respect to testifying in one's own defense are tactical ones "to be made by the defendant himself after consultation with his trial counsel[,] and there is no general requirement that a trial court interject itself into that decision-making process." *Burton v. State,* 263 Ga. 725, 728 (6) (438 SE2d 83) (1994) (citations omitted). See also *Spencer v. State,* 287 Ga. 434, 438-439 (3) (696 SE2d 617) (2010) (noting the potential danger of disclosing privileged content of discussions between defendant and his lawyer about whether to testify). "Courts thus have no duty to advise a defendant of the right to testify or to determine on the record whether the defendant's decision is voluntary, knowing, and intentional." *Gibson v. State,* 290 Ga. 6, 9 (4) (717 SE2d 447) (2011) (citations omitted). Because the trial court had no duty to advise Williams as to

his testimony at the sentencing hearing, the failure of his lawyers to request the court's assistance in that way did not amount to ineffective assistance of counsel. See *Ethridge v. State*, 283 Ga. App. 289, 290-291 (2) (641 SE2d 282) (2007).

(j) To the extent that Williams has shown, or that we have assumed, that his lawyers' assistance was deficient for any reason discussed in Division 3, we also find that the *cumulative* effect of any such deficiencies did not create a reasonable likelihood that the outcome of the trial would have been different but for any deficient performance. *Sears v. State*, 292 Ga. 64, 72 (5) (d), n. 6 (734 SE2d 345) (2012); *Schofield v. Holsey*, 281 Ga. 809, 811 (II), n. 1 (642 SE2d 56) (2007).

*Judgments affirmed. All the Justices concur.*

DECIDED APRIL 29, 2013.

*Steven L. Sparger*, for appellant.

*Larry Chisolm, District Attorney, Arvo H. Henifin, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.