## A96A1463. EDWARDS v. THE STATE.
(479 SE2d 754)

SMITH, Judge.
Richard Bernard Edwards was indicted on two counts each of burglary and aggravated assault arising out of the burglaries of two homes and assaults on their occupants. He was convicted on all four counts. Edwards's motion for new trial as amended was denied, and he appeals.

1. Edwards contends the evidence was not sufficient to convict

him of any of the crimes.

(a) Construed to support the verdict, evidence was presented that on December 7, 1994, at about 7:00 a.m., while showering, one of the victims heard a noise and looked out of her open bathroom door into her bedroom. Her husband had just left for work. She saw a strange man she later identified as Edwards walk from her bedroom into the hallway. She screamed, and he "charged down the hallway toward the bathroom." The victim closed the bathroom door and attempted to lock it, but Edwards struck the door, splintering the wood and knocking out the lock mechanism. He shoved the victim's face, knocking her onto the vanity and then into the bathtub. As a result, she suffered bruises to her neck and back. He held her in the bathtub with his hand on her face and then moved it to her neck. The victim attempted to strike Edwards, and he removed his hand from her neck, ran through the house, and took her purse. While Edwards ran through the house, the victim ran outside and into her driveway. She saw Edwards run out her front door and toward her back yard.

The ensuing investigation revealed an open bedroom window with the screen removed, a single glove inside the bathtub, and wet marks on the floor leading from the open window through the bedroom, and into the bathroom. Outside the window a five gallon bucket was overturned, and the items formerly atop the victim's nightstand lay on the ground outside the window. The investigating officer opined, based on the victim's description of the direction in which her assailant fled, that he fled in a westerly direction. Shortly after the incident, the victim examined two photographic lineups and positively identified Edwards as her assailant. She also identified Edwards at a lineup conducted at the Greensboro Police Department, and she positively identified him at trial. This evidence was sufficient to convict Edwards of aggravated assault and burglary on December 7 under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See, e.g., *Palmer v. State*, 219 Ga. App. 819, 820 (1) (467 SE2d 6) (1996); *McClern v. State*, 218 Ga. App. 720 (1) (463 SE2d 49) (1995).

(b) Evidence was also presented that three days earlier, on December 4, 1994, around 7:30 a.m., a different victim discovered a stranger standing in a bedroom in her residence shortly after her husband left for work. This victim lived about a block away from the victim described in Division 1 (a). She screamed, and he shoved her in her face, knocking her onto the floor, and then ran outside. She watched him flee in a westerly direction. Her wallet was taken from the house. She testified she thought a glove was used by her assailant because "that's the way it felt on my face." This victim never identified Edwards as her assailant, either before trial in photographic lineups or at trial. No fingerprints were found inside her residence.

She stated that her assailant entered and exited her home through her back terrace door.

If the only evidence adduced by the State was the testimony of this victim, we might agree with Edwards that the evidence was insufficient to convict him of burglary and aggravated assault. No indication of the assailant's identity would have been revealed and the evidence would have shown only that a burglary and aggravated assault occurred. However, the evidence as to the December 7 incident was relevant not only to implicate Edwards of burglary and assault on *that* date, but also to provide evidence of the identity of the December 4 assailant.

The testimony of both victims revealed several undisputed striking similarities between the incidents at their respective homes: (1) the incidents occurred three days apart, at approximately the same time of day, shortly after the victims' husbands had left for work; (2) the assailant made unauthorized entries into both homes; (3) the assailant fled in the same direction "within degrees of a compass heading" after each assault; (4) the victims lived approximately a block away from one another; (5) the assailant shoved both victims in their faces causing them to fall; (6) a glove was used in both incidents; and (7) the victims' purses were stolen or searched. The clear effect of these undisputed similarities was to reveal a common scheme, or modus operandi, in the nature of a pattern or signature. The positive evidence that Edwards committed the assault and robbery on December 7, in nature and method so similar to the December 4 incident, served as evidence that Edwards was the assailant on that date as well, despite the victim's inability to identify him. Because this evidence of Edwards's identity was adduced at trial, we find the evidence sufficient to convict him of aggravated assault on December 4, as well. See *Shaw v. State*, 211 Ga. App. 647, 648 (1) (440 SE2d 245) (1994).

2. Edwards contends the trial court erroneously denied his motion to suppress. A search warrant was executed at the home of Nerissa Jernigan, Edwards's cousin, and a pair of K-Swiss tennis shoes was seized. Edwards contended below that sufficient probable cause did not exist for search of the premises. Evidence was presented at a hearing on the motion that only Jernigan and her three children resided at the apartment in December 1994 and that Edwards never lived with her. Jernigan did state that Edwards "used to come and visit." The trial court denied the motion, ruling that Edwards did not have standing to challenge the search.

The trial court's ruling was correct. Undisputed evidence was presented that Edwards never resided with Jernigan, was not present at her residence when the search occurred, and never claimed a "right of ownership or possession in the property seized." *Boatright v.*

*State*, 192 Ga. App. 112, 114 (3) (385 SE2d 298) (1989). In fact, he disavowed ownership of the shoes, denying that they belonged to him and testifying that he would never wear such shoes. Consequently, he did not have a "reasonable expectation of privacy in the premises searched" and did not have standing to challenge the search. Id. See also *Rutherford v. State*, 191 Ga. App. 505, 506 (382 SE2d 205) (1989).

We reject Edwards's contention that he had standing because the affidavit on which the warrant was based recited that he lived with Jernigan. As pointed out by the State during the hearing on the motion to suppress, at the time the search warrant was executed, investigators had probable cause to believe that Edwards did live with Jernigan, and an affidavit was sworn to that effect. No evidence was produced refuting the sworn testimony of the affiant as to his belief regarding Edwards's residence. Edwards's own knowledge determined whether he had a reasonable expectation of privacy in property seized in Jernigan's residence. The fact that Edwards never resided at Jernigan's apartment — and not the belief of the investigators in the initial stages of the investigation — established the absence of such an expectation.

3. Edwards contends the trial court erroneously admitted certain photographs of him into evidence. The photographic arrays of several individuals, including Edwards, and photographs of the lineup viewed by one of the victims were admitted over Edwards's objection. Edwards contended below that the photographs of himself erroneously implicated his character because markings on the backs of the photographs indicated they were booking photographs taken in conjunction with prior arrests and also because he was wearing jail garb — an orange jumpsuit. Some of the photographs also depicted handcuffs.

It is well settled that mug shots in and of themselves do not prejudice a defendant or implicate his character, if they are relevant to some issue in the case and if they do not identify the defendant as having a prior criminal record. See, e.g., *Austin v. State*, 174 Ga. App. 127 (329 SE2d 233) (1985); compare *Stanley v. State*, 250 Ga. 3, 4 (295 SE2d 315) (1982) and *Webb v. State*, 156 Ga. App. 623, 626 (7) (275 SE2d 707) (1980) (mug shots not relevant to the case because identity not an issue, and mug shots "could easily have given the jury the impression that the appellants had been in trouble with the law on some previous occasion").

The State and the trial court took adequate steps to prevent the jury from observing that the photographs may have been taken in conjunction with previous arrests. The photographs were admitted to establish Edwards's identity and were not described to the jury as mug shots from prior arrests but instead as "pictures of people simi-

lar to [Edwards's] appearance." No reference was made to any prior criminal record. The photographs were secured by staples inside folders so that the jury could not examine their reverse sides indicating that they were "booking" photos from previous arrests. Those photographs depicting handcuffs were cropped to remove the image of the handcuffs, and the photograph depicting the orange jumpsuit was cropped so that Edwards appeared to wear an orange shirt, rather than the jumpsuit. The photographs did not indicate that Edwards had committed any previous crime or had been arrested on other charges and hence did not implicate his character. See *Austin v. State,* supra; *Dowdy v. State,* 169 Ga. App. 14, 16 (4) (311 SE2d 184) (1983). The trial court did not err in admitting the photographs.

4. Edwards contends that the husband of one of the victims should have been sequestered for the duration of the trial. After the State rested, Edwards objected to the husband's presence in the courtroom during presentation of the State's case. He moved for mistrial below on this ground, among others.

It is true that parties have the right to have witnesses of another party examined out of the presence of each other. OCGA § 24-9-61. This rule does not, however, prohibit persons other than witnesses from observing the proceedings. See generally *Stevens v. State,* 247 Ga. 698, 702-703 (6) (278 SE2d 398) (1981), cert. denied, 463 U. S. 1213 (103 SC 3551, 77 LE2d 1398) (1983). Although the victim's husband's name appeared on the State's witness list originally provided to Edwards, he was removed from the list and did not testify on the State's behalf. This individual, not being a witness for the State, was not subject to the rule of sequestration. We note that after the State rested, the victim's husband was placed under subpoena — by Edwards. At that time, he was sequestered. No violation of the rule of sequestration occurred, and the trial court did not err in denying Edwards's motion for mistrial.

5. Edwards contends the trial court abused its discretion in allowing the jury to disperse for lunch during its deliberations. Edwards did not object to dispersal of the jury and therefore has waived this contention on appeal. Moreover, we have examined the record and have found no abuse of discretion. OCGA § 15-12-142 (a) provides that the trial court may allow the jury to disperse under appropriate instructions during deliberations. The trial court instructed the jurors not to discuss the case with anyone during their lunch recess, and the record does not indicate that any improper communications regarding the case occurred among the jurors. We find no merit in this contention.

*Judgment affirmed. Pope, P. J., and Andrews, J., concur.*

## On Motion for Reconsideration.

Edwards raises several arguments on motion for reconsideration. These arguments were considered in full by us prior to concluding that no basis for reversal exists. We write here only to clarify our conclusion that the evidence was sufficient to convict Edwards of burglary and aggravated assault at the residence discussed in Division 1 (b).

Edwards argues that the evidence did not reveal the requisite intent to rob the victim in the December 4 incident. In proving intent, however, it is not necessary that the State introduce evidence that the accused "expressed an intent to rob in so many words, or declared a purpose to carry the intent into effect, for the jury to arrive at the conclusion he so intended. The intention may be gathered from the circumstances of the case as proved. In seeking the motives of human conduct, inferences and deductions may properly be considered where they flow naturally from the facts proved." (Citations and punctuation omitted.) *Loumakis v. State*, 179 Ga. App. 294, 296 (1) (346 SE2d 373) (1986). In addition to the similarities of the incidents against both victims in this case, evidence was presented that the wallet of the December 4 victim was taken from her purse. These circumstances, especially the fact that the victim's wallet was taken, were sufficient to authorize a rational trier of fact to conclude that Edwards entered the victim's house with the intent to rob. We find no merit in this contention.

DECIDED SEPTEMBER 11, 1996 —
RECONSIDERATION DENIED DECEMBER 12, 1996.

*Robert E. Surrency*, for appellant.
*Fredric D. Bright, District Attorney, Vanessa Flournoy, Assistant District Attorney*, for appellee.