A97A0826. SIMS v. THE STATE.
(486 SE2d 365)

BIRDSONG, Presiding Judge.

Steven Sims appeals his conviction for armed robbery. He challenges the sufficiency of the evidence and claims he was prejudiced by certain comments a prospective juror made during voir dire. He also asserts error in the trial court's admission in evidence of his mug shot and of a gun found in his home. *Held*:

1. We review Sims' challenge to the sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560), construing the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Just before 9:00 p.m. on December 27, 1995, a man wearing a mask, black sweatshirt, jeans, and tennis shoes entered the Corner Pantry convenience store wielding a pistol. He held up the store and fled with a paper bag full of cash and change. Although the cashier could not identify her assailant, the incident was captured on a videotape which the jury viewed at trial.

Around 9:00 p.m., Sims and another man knocked on the door of an apartment near the Corner Pantry occupied by Michael Moody.

Moody testified Sims and the other man had a mask, a gun, and a paper bag full of money. They soon left, threatening Moody that he should not tell anyone, but Moody called the police. Athens police retrieved from a trash can outside the apartment a mask, which the clerk identified as the one the robber wore.

Trial testimony shows Moody was not completely cooperative with police at first and wanted $100 for Sims' identity. Several days later, however, Moody confirmed to an Athens detective that Steven Sims was one of the men. In a resulting search of Sims' room in his mother's house, police found a silver revolver hidden in the closet. Moody testified at trial that this gun "looked like" the one Sims and his companion had the night of the robbery. The detective also testified this gun appeared to be the gun shown in the videotape of the robbery. The detective further testified that he had known Sims for several years, and the robber in the videotape possessed the same build and mannerisms as Sims. When Sims was arrested, he was wearing Adidas tennis shoes matching the description of those worn by the robber. Sims received his *Miranda* warnings, and police told him that they knew where he had gone after the robbery and that they had recovered the mask, sweatshirt, and shoes shown in the videotape. Asked if he wanted to explain, Sims replied, "You've got everything, what else is there for me to say?" He also asked the officers several times, "Who told on me?"

This evidence, construed most strongly in favor of the jury's verdict, supports the conviction. Although the jury heard that Moody had at one point recanted his statement implicating Sims, Moody claimed he changed his statement because he was afraid of Sims. Moody's credibility was a question for the jury, and not for this Court, to determine. See *Jones v. State*, 220 Ga. App. 161, 162 (1) (469 SE2d 300). Furthermore, the detective's testimony identifying Sims as the person in the videotape, Sims' own statements, and independent physical evidence allowed the jury to determine Sims was the robber shown in the videotape. See *Shropshire v. State*, 223 Ga. App. 118 (1) (476 SE2d 859).

2. The trial court did not err in refusing to grant a mistrial based on a prospective juror's comments during voir dire. In response to questioning, the venireman stated that he had worked with "mentally retarded kids, behavior kids coming up here, kids that have been subjected to drugs" and had also worked with the YDC, or Youth Development Center. Referring to Sims, then a young adult, he stated, "I'm not totally sure, but I think I remember his face, but I'm not sure." Defense counsel requested a mistrial, which the court denied, but refused the court's offer to give curative instructions. The court later questioned each prospective juror individually to determine whether he or she would be influenced by anything said by

other prospective jurors during voir dire, and every juror answered negatively. The venireman's comments did not establish he knew Sims, nor did they even raise any inference that Sims had a criminal record or had ever been detained at the YDC, or even that the juror thought Sims had. The comments were not inherently prejudicial, and the trial court took appropriate action to ensure the jury had not been influenced by the statements. Therefore, the trial court did not err by denying Sims' motion for mistrial. See *Nelson v. State*, 222 Ga. App. 443, 444 (2) (474 SE2d 304); *Yarber v. State*, 159 Ga. App. 392, 393 (283 SE2d 620). This case is very different from *Lingerfelt v. State*, 147 Ga. App. 371, 372 (1) (249 SE2d 100), in which the venireman's statements in a rape case accused the defendant of being a sexual deviant.

3. The trial court did not improperly allow character evidence by admitting "mug shot" photos of Sims after removing from those photographs any information which might indicate the nature of the photos. The detective identified these as photos of the person who Moody said came to his apartment the night of the robbery. Considering Moody's later refutation of that statement, these photographs were relevant to show his prior consistent statement. Because the photographs were relevant and did not indicate Sims had any prior arrest or criminal record, the photographs were admissible. See *Edwards v. State*, 224 Ga. App. 14, 17-18 (3) (479 SE2d 754). Moreover, testimony that a defendant's name and photograph are on file with police does not alone put defendant's character in issue. *Milsap v. State*, 196 Ga. App. 820, 822 (1) (397 SE2d 168). Compare *Roundtree v. State*, 181 Ga. App. 594 (353 SE2d 88), in which the photographs indicated the date a defendant was arrested for a prior crime.

4. In Sims' final enumeration of error, he contends the trial court erroneously admitted the silver, pearl-handled revolver found in the closet of his room in his mother's house. We find no error. The clerk and the detective testified the gun in the videotape appeared to be a silver revolver, and Moody testified this gun "looked like" the one Sims brought to his apartment the night of the robbery. Whether the gun admitted into evidence was the weapon used in the robbery was, therefore, a jury question, and the trial court did not err by ruling this evidence relevant and admissible. *Sims v. State*, 197 Ga. App. 214, 215 (1) (398 SE2d 244); *Holloway v. State*, 190 Ga. App. 528, 530 (3) (379 SE2d 542). The case Sims cites, *Paxton v. State*, 160 Ga. App. 19, 23 (6) (285 SE2d 741) is not authority to the contrary, for a key question there was whether the defendant used a gun in the attack, and thus the State's arbitrary introduction in evidence of a weapon having no connection whatsoever to the crime or to the defendant was found to prejudice that defendant.

*Judgment affirmed. Eldridge, J., and Senior Appellate Judge*

*Harold R. Banke concur.*

DECIDED APRIL 7, 1997.
Before Judge Gaines.
*Rosemary M. Hathaway*, for appellant.
*Harry N. Gordon, District Attorney, Henry R. Thompson, Assistant District Attorney*, for appellee.