A01A1513. COBURN v. THE STATE.
(555 SE2d 750)

SMITH, Presiding Judge.

Frank Coburn was indicted by a DeKalb County grand jury on one count of armed robbery. He was tried by a jury, which returned a verdict of guilty. He appeals from the conviction and sentence entered upon the jury's verdict following the denial of his motion for new trial. Coburn raises six enumerations of error, but we find no error and affirm the judgment below.

1. The evidence presented at trial showed that the victim was waiting for a bus at about 6:45 p.m. when she observed a gray car pass the intersection and then drive back and blink its lights. She then saw a man wearing a black jacket and hood approaching from the side street. After inquiring how long she had been waiting for the bus, the man pulled a gun out of his pocket, came very close, pointed the gun at her, and said: "B—ch, you better not yell." The man was close enough to touch her, and she got a good look at his face. When the man tried to hold her by the collar, the victim dropped the

backpack she was carrying and fled. When she looked back, she saw the man pick up the bag and run.

The victim encountered a passing police officer, informed him she had been robbed, and showed the officer the direction in which the gunman fled. The officer then gave chase. The victim, meanwhile, went to the nearby apartment of an acquaintance and asked her to telephone 911, which was done. The officer pursued the robber, and the chase ended when the robber's car went over an embankment and crashed. It was dark, and the officer could see nothing over the embankment and was forced to wait for backup. By the time officers were able get down the embankment to check out the car, the door was open and the driver was gone. After the car was lifted from the embankment, the officer did a "quick inventory" and discovered, among other items, some identification belonging to Coburn, a few bullets, and a purse containing the victim's identification.

The car was registered to Coburn. Later that night, Coburn reported his car stolen, and he made a statement claiming he had been hijacked earlier, ran from the scene, and called his mother and his girlfriend, telling them to call the police. Coburn's photograph was taken, and it was used in a photo lineup shown to the victim several days later. The victim positively identified Coburn as the man who robbed her.

Coburn argues that this evidence was insufficient to support his conviction for armed robbery, particularly because he never told the victim to hand over her property; he merely picked it up after she dropped it when she fled. But, contrary to Coburn's argument, "[i]t has long been recognized that when perpetrators forcibly cause the victim to be away from the immediate presence of the property at the time it is stolen, the offense of armed robbery can still be committed." (Citations and punctuation omitted.) *Heard v. State*, 204 Ga. App. 757, 758 (1) (420 SE2d 639) (1992). The victim here was lucky enough to escape before the gun was actually used to force her to turn over her property, but that fact should not serve as a shield to prevent Coburn from being held responsible for what was clearly an armed robbery. *Maddox v. State*, 174 Ga. App. 728, 730 (1) (330 SE2d 911) (1985). The evidence was sufficient to authorize the jury to find Coburn guilty as charged under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Coburn maintains the trial court erred in conducting a hearing in his absence concerning alleged juror misconduct. This incident occurred after the close of evidence, while the jury was deliberating. Coburn's mother reported to the defense attorney that, while sitting just outside the courtroom, she heard through the closed courtroom door the alternate juror speaking with a deputy inside the courtroom. The defense attorney reported the incident to the court. The court

conferred with both counsel in chambers, then questioned various parties in the courtroom in the presence of both counsel, but in Coburn's absence.

Mrs. Coburn stated that the alternate juror had told the deputy "that he didn't tell the whole truth and nothing but the truth." She indicated that she looked in through the glass to see who was present in addition to the alternate and the deputy, and she saw the court reporter and another juror. The deputy, on the other hand, stated that the alternate told him she was glad she was an alternate, because the room in which she was waiting while the jury deliberated was far more comfortable than the jury room, but nothing was said about the case. He informed the court that although a juror had been present right before the alternate juror made the statement in issue, that juror left. No one but another deputy was present in the courtroom when the alternate juror mentioned that her brother was a police officer and that he felt that if people were arrested they were probably guilty.

The court reporter denied having been in the courtroom when the conversation between the deputy and the alternate juror took place. The alternate was questioned, and she said she observed the last juror leaving the room and the door to the jury room closing. She then remarked to the two deputy sheriffs in the room jokingly that she wanted to make sure they knew she was there and did not forget about her. She said she joked about her brother's comment that "if they arrested them, they're guilty" and was "cutting up" about the alternate jury room being her "cell" but had not commented about anything concerning the case. The court then asked both counsel if they had any questions they would like to ask the alternate juror, and both counsel indicated they did not. The court obviously concluded that no juror had been present when the reported comment was made and no comment related to the case being tried. Both counsel agreed, and the court took no further action. The alternate juror was not needed and never participated in the deliberations.

Under the Georgia Constitution of 1983, Art. I, Sec. I, Par. XII, "[n]o person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." This has been interpreted, in the context of a criminal case, as including a defendant's "right to be present, and see and hear, all the proceedings which are had against him." (Citations, punctuation and emphasis omitted.) *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998). And the involuntary absence of a criminal defendant during any portion of his trial may never be considered harmless error. *Goodroe v. State*, 224 Ga. App. 378, 381 (1) (480

SE2d 378) (1997).[1] But in this case, we need not reach the issue of whether any error was harmless, because we conclude that no error occurred. This case does not involve tainting the jury that rendered the verdict through communication with a bailiff about the case, as in the incident that occurred in *Wanzer v. State*, 232 Ga. 523 (207 SE2d 466) (1974).[2] It does not involve an actual juror communicating with an outsider and expressing concerns that might affect his vote as to the verdict, as in *Pennie v. State*, 271 Ga. 419 (520 SE2d 448) (1999).

Here, the alternate juror did not discuss the case under deliberation, had no contact with any actual juror, and did not participate in the jury deliberations or the verdict. However misguided her conversation with the deputies, it had no effect whatsoever on the jury's verdict. The trial court's inquiry was merely a preliminary and informal one, to ascertain whether what transpired was, in fact, relevant to Coburn's trial; the court simply ascertained the facts and decided they were not relevant to the trial. Had the court decided that the incident was relevant and moved on to an inquiry into whether the jury had been tainted, we would necessarily rule otherwise. But we must conclude that under these narrow and specific circumstances, there was simply no error in proceeding with the limited inquiry outside the presence of the defendant, and we need not inquire whether a harmless error inquiry is proper. Mindful as we are of the right of a defendant to be present during all that occurs at his trial, it would, in fact, be "trifling with justice" to reverse Coburn's conviction here, when the incident had not the slightest impact on or connection to the trial or the jury's verdict. *Stewart v. State*, 165 Ga. App. 428, 430 (2) (300 SE2d 331) (1983).

3. Because we have found no error in the trial court's holding an informal inquiry into the alleged juror misconduct without ensuring that Coburn was present, we likewise find no merit in Coburn's contention that his trial counsel was ineffective in failing to ensure his presence at that inquiry.

4. Coburn also asserts that his trial counsel was ineffective in two other ways:

(a) He alleges counsel was ineffective in conducting the cross-examination of a detective. He argues that the detective's testimony was highly incriminating and included inadmissible hearsay. This

---

[1] The State's claim that Coburn waived his right to assert error under the Georgia Constitution because he does not cite it as authority for his argument has been decided adversely to the State in *Goodroe*, supra at 379.

[2] *Wanzer* indicates, however, that it was not error to deny a motion for mistrial based upon the unauthorized communication, because it is apparent that the communication had no effect on the jury's verdict. Id. at 525-527 (1).

enumeration refers to the fact that the detective testified and implied, although he was not present at the scene, that certain items found in the car were found in a briefcase in the car, along with bills belonging to Coburn. Coburn's trial counsel did not object to this testimony. At the hearing on the motion for new trial, trial counsel testified that he permitted this testimony after weighing its costs and benefits, because he did not want the jury to have the impression he was trying to hide something. Trial counsel's testimony clearly shows that the decision was a matter of trial strategy, and "[t]rial strategy and tactics do not equate with ineffective assistance of counsel. [Cit.]" *Nelson v. State*, 242 Ga. App. 63, 66 (7) (528 SE2d 844) (2000).

(b) Coburn argues that counsel provided ineffective assistance when he failed to challenge or present evidence regarding a tainted in-court identification. At the hearing on the motion for new trial, Coburn's girlfriend testified that at the probable cause hearing, the victim unknowingly sat near her. They soon realized that they were acquainted, having worked together previously. After some conversation, Coburn's girlfriend told the victim she was there because her "fiancé" was scheduled for court. She asked the victim why she was present. Although Coburn was not yet in court, four men in jail clothing were standing with their backs to the victim. Without directly answering the girlfriend's question, the victim pointed to a man with braids and said she was not sure if that was the one who had robbed her. According to Coburn's girlfriend, a detective then entered, escorting Coburn to the front bench. He then seated himself next to the victim and told her: "The person that I brought in is the person that robbed you." Coburn's girlfriend testified that she immediately told Coburn's lawyer of the incident.

Coburn's trial counsel filed a motion to suppress the identification prior to trial. He then withdrew the motion. He testified at the hearing on the motion for new trial that he withdrew the motion to suppress so that the State's witnesses would not have an opportunity to "rehearse" being cross-examined on their testimony. "Whether to file pretrial motions and how to argue them are strategic decisions, and when reasonable in the context of the case, do not constitute error. [Cit.]" *Stroud v. State*, 272 Ga. 76, 78 (4) (526 SE2d 344) (2000). Although this decision may possibly have been unwise,

> [t]he standard regarding ineffective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy.

Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result.

(Citations and punctuation omitted.) *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998).

It is unclear which identification Coburn seeks to suppress. The victim identified Coburn at a photographic lineup, at the preliminary hearing, and at trial. Coburn has shown no basis on which to have the photographic lineup identification suppressed. Although the victim took her time making her selection, no impropriety has been shown in that lineup, and nothing "impermissibly suggestive" took place under *Neil v. Biggers*, 409 U. S. 188, 196 (93 SC 375, 34 LE2d 401) (1972). See *Williams v. State*, 272 Ga. 828 (2) (537 SE2d 39) (2000). The trial court entered a thorough and detailed order denying Coburn's motion for new trial. The trial court did not find Coburn's girlfriend's testimony persuasive, nor did it find the photographic lineup impermissibly suggestive. But even if it had, the victim could have been permitted to identify Coburn at trial, because the victim was quite definite at trial that Coburn was the man who robbed her. Her opportunity to view Coburn during the robbery was excellent, and this was an "independent origin" for her in-court identification, unrelated to the photo lineup or the preliminary hearing. See generally *Spruell v. State*, 237 Ga. App. 448, 450 (2) (514 SE2d 896) (1999).

(c) Coburn contends trial counsel was deficient in failing to request a jury charge on prior consistent statements. Coburn gave a statement to police officers several hours after the robbery. He told them he had been at a nearby convenience store when he was carjacked at gunpoint, fled on foot, and became lost in a residential neighborhood. He argues that this statement was consistent with his trial testimony, and a jury instruction to this effect was permissible and would have been helpful.

It is true that prior consistent statements are admissible as substantive evidence. *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985). But that is true only when the witness's veracity has been placed in issue at trial and the witness is present at trial and available for cross-examination. *Woodard v. State*, 269 Ga. 317, 319-320 (496 SE2d 896) (1998). That was not true here. Moreover, his statement was inconsistent with his trial testimony in several respects, such as changing the time and place he made the phone calls to his mother and girlfriend.

But to establish ineffective assistance of counsel, a defendant must satisfy both prongs of the test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). He must show that counsel's performance was deficient and also that a reasonable probability exists that but for counsel's errors, the outcome of

the trial would have been different. In all these instances, even if counsel's performance had been shown to be deficient, Coburn has not shown how any of these alleged deficiencies would have affected the outcome of the trial. The trial court correctly concluded that counsel did not provide ineffective representation.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED OCTOBER 17, 2001 —
RECONSIDERATION DENIED NOVEMBER 6, 2001 —

*Barry M. Hazen,* for appellant.
*J. Tom Morgan, District Attorney, Sheila A. Connors, Jeanne M. Canavan, Assistant District Attorneys,* for appellee.