**THIRD DIVISION**
**DILLARD, J.**
**MCFADDEN, AND MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 3, 2016**

# In the Court of Appeals of Georgia

A15A2137. JACKSON v. THE STATE.

McFADDEN, Judge.

After a jury trial, Arreon Lashun Jackson was convicted of four counts of armed robbery, one count of burglary, and one count of possession of a firearm during the commission of a crime. He argues on appeal that the evidence was insufficient to support his conviction on one of the armed robbery counts, that the trial court erred in dismissing a juror during trial, and that he received ineffective assistance of trial counsel. We find, however, that the evidence was sufficient, that the trial court did not abuse his discretion in dismissing the juror, and that Jackson has not shown that his trial counsel performed deficiently. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

When a defendant challenges the sufficiency of the evidence supporting his criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld." *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citations and punctuation omitted).

Viewed in this light, the evidence showed that early in the morning of March 6, 2012, Jackson and others entered the residence of several farm workers. The intruders fired nine bullets through a closed door leading from the kitchen into the workers' bedroom, striking and injuring one man. Then Jackson and at least one other man entered the bedroom, where one of them hit a worker in the face with a gun, briefly knocking him unconscious. The intruders rifled among the workers' belongings, taking money and other items, then fled in a vehicle.

Jackson argues that the evidence was insufficient to support his conviction on one of the counts of armed robbery, which alleged that he had committed armed

robbery against farm worker Antolin Sanchez by using a firearm to take Sanchez's cell phone from him. He argues that the evidence did not authorize a finding that the cell phone was taken from Sanchez's immediate presence because Sanchez was not in the room at the time of the taking. We disagree.

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]" OCGA § 16-8-41 (a). "(O)ne's 'immediate presence' in this context stretches fairly far[.]" *Patterson v. State*, 312 Ga. App. 793, 797 (3) (720 SE2d 278) (2011) (citation omitted). "An armed robbery may be committed even out of the physical presence of the victim if what was taken was under the victim's control or responsibility and if the victim was not too far distant." *Matthews v. State*, 268 Ga. 798, 804 (7) (a) (493 SE2d 136) (1997) (citation and punctuation omitted).

In this case, the evidence viewed in the light most favorable to the verdict showed that the cell phone was under Sanchez's control and responsibility; it belonged to him and was taken off of his bed. The evidence also showed that, although Sanchez was not in the room when the cell phone was taken, he was nearby and "not too distant": the evidence showed that Sanchez had been in the bedroom and

3

was struck by splintered wood when the shots were fired; he then escaped the room through another door and ran to an adjacent building to call for help; as he was calling for help, and within five minutes of the shooting, the intruders fled in a vehicle; and when Sanchez returned to the bedroom shortly thereafter his cell phone was gone. We have held under similar circumstances – in which a victim faced with an offensive weapon fled the scene, leaving behind property that the defendant then took – that the evidence was sufficient to support an armed robbery conviction. See *Lester v. State*, 267 Ga. App. 795, 796-798 (1) (600 SE2d 787) (2004) (after defendant beat store clerk with bat, clerk fled store but remained in vicinity; defendant then took items from store); *Baldivia v. State*, 267 Ga. App. 266, 267-269 (1) (599 SE2d 188) (2004) (defendant shot at victims who fled scene for ten to fifteen minutes; defendant then took their car); *Coburn v. State*, 252 Ga. App. 315, 315-316 (1) (555 SE2d 750) (2001) (defendant pulled gun on victim, who dropped her backpack and fled; defendant then took backpack); *Kemper v. State*, 251 Ga. App. 665, 665-666 (1) (555 SE2d 40) (2001) (defendant pointed gun at victim and told her to get into trunk of vehicle; instead victim placed money in trunk and fled, and defendant then drove away with money); *Wilson v. State*, 207 Ga. App. 528, 528-529 (1) (428 SE2d 433) (1993) (restaurant cashier left her register and went to her

4

manager's office after defendant displayed gun; when she returned, cash from register was gone); *Heard v. State*, 204 Ga. App. 757, 757-758 (1) (420 SE2d 639) (1992) (after defendant shot into victims' car, striking one victim and forcing them from road, victims left car and fled into woods; defendant then stole car); *Morgan v. State*, 195 Ga. App. 732, 732-734 (1) (394 SE2d 639) (1990) (store clerk fled store after defendants threatened him with a knife; defendants then stole items from store); *Maddox v. State*, 174 Ga. App. 728, 728-730 (1) (330 SE2d 911) (1985) (from another room, store owner saw defendants enter store, one with a shotgun; after owner fled to a nearby house to call the police, defendants stole items from store). See also *Matthews*, supra, 268 Ga. at 804 (7) (a) (holding, in connection with a jury charge ruling, that "[e]ven if the robbery victim succeeded in escaping from the store before the money was taken from the cash register, the 'immediate presence' requirement of OCGA § 16-8-41 (a) was satisfied.").

2. *Dismissal of juror.*

During trial, the trial court dismissed a juror over Jackson's objection and replaced the juror with an alternate. The trial court did so after learning that the juror failed to reveal in response to voir dire questioning that he knew Jackson's father and after receiving evidence that, during a break in the trial proceedings, the juror had

5

been seen speaking with Jackson's father in a parking lot. Jackson argues that the trial court abused his discretion in dismissing the juror. We find no abuse of discretion.

Under OCGA § 15-12-172, "[i]f at any time . . . a juror dies, becomes ill, upon good cause shown to the court is found to be unable to perform his duty, or *is discharged for other legal cause*, the first alternate juror shall take the place of the first juror becoming incapacitated." (Emphasis supplied.) "It is well established that OCGA § 15-12-172 provides a trial court with discretion to discharge a juror and replace him or her with an alternate at any time, and we will not reverse as long as the court's exercise of discretion has a sound legal basis." *Worthy v. State*, 223 Ga. App. 612, 613 (1) (478 SE2d 421) (1996) (citation and punctuation omitted).

> A sound basis may be one which serves the legally relevant purpose of preserving public respect for the integrity of the judicial process. Where the basis for the juror's incapacity is not certain or obvious, some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion. Dismissal of a juror without any factual support for or for a legally irrelevant reason is prejudicial.

*State v. Arnold*, 280 Ga. 487, 489 (629 SE2d 807) (2006) (citations and punctuation omitted).

The record shows that after the state brought the issue regarding the juror to the trial court's attention, the trial court inquired into the situation, receiving testimony from the juror and two witnesses to the juror's conversation with Jackson's father, and obtaining representations from the prosecutor about the juror's voir dire responses. This provided sufficient grounds for the trial court, in his discretion, to dismiss the juror for legal cause. See *Smith v. State*, __ Ga. App. __, __ (1) (__ SE2d __) (Case No. A15A1664, decided Jan. 25, 2016) (trial court did not abuse discretion in dismissing juror who appeared as a friend on defendant's Facebook page but who had not responded affirmatively when asked in voir dire if she knew defendant); *Wooten v. State*, 250 Ga. App. 686, 687 (3) (552 SE2d 878) (2001) (trial court did not abuse discretion in dismissing juror who failed to reveal in voir dire that he knew defendant and who indicated to other jurors that he was familiar with defendant and would not consider victim's testimony); *Gurr v. State*, 238 Ga. App. 1, 4 (4) (516 SE2d 553) (1999) (trial court did not abuse discretion in dismissing juror who had been contacted by persons interested in case, "for such [dismissal] preserves the integrity of the judicial process") (citations omitted); *Worthy*, 223 Ga. App. at 614 (1) (trial court did not abuse discretion in dismissing juror who had been seen talking with defendant during break in trial); *Darden v. State*, 212 Ga. App. 345, 347 (4) (441

7

SE2d 816) (1994) (trial court did not abuse discretion in dismissing juror who knew defendants and had been seen talking with them during trial; juror had attempted to inform state that she knew defendants but prosecutor did not see juror's raised hand in response to voir dire question).

We do not agree with Jackson's assertion that "[n]o evidence was entered into the record showing that [the juror] denied knowing Mr. Jackson's family during voir dire." The prosecutor made representations to that effect to the trial court. "Attorneys are officers of the court, and a[n attorney's] statement to the court in his place is prima facie true and needs no further verification unless the same is required by the court or the opposite party." *Morris v. State*, 228 Ga. 39, 49 (11) (184 SE2d 82) (1971) (citation and punctuation omitted). At trial, the prosecutor stated to the trial court that he "asked specifically about [Jackson's father ], and there was no response at all of any knowledge or friendship or anything by that juror," and Jackson sought no further verification. Moreover, without a transcript of the voir dire setting forth the questions asked of the jurors and their responses thereto, we cannot say that the trial court erred in finding that the juror at issue failed to respond affirmatively when asked if he knew any members of Jackson's family. See *Nwakanma v. State*, 296 Ga. 493, 500 (5) (768 SE2d 503) (2015) ("If counsel raise issues on appeal relating to

8

voir dire, they also must transcribe the voir dire in order for there to be an appellate review, as an appellant carries the burden of showing error by the record.") (citation and punctuation omitted).

3. *Ineffective assistance.*

Jackson argues that he received ineffective assistance of trial counsel because his counsel "improperly commented on Mr. Jackson's invocation of his right to counsel and his right to remain silent." But as detailed below, the record shows that Jackson's trial counsel did not comment on his invocation of his right to remain silent, and Jackson has not shown that his counsel was deficient in commenting on his invocation of his right to counsel.

To prevail on his claim of ineffective assistance, Jackson must prove

both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

9

*Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) (citations and punctuation omitted).

Jackson asserts that his trial counsel improperly commented on his invocation of his rights to silence and to counsel at two points during trial. The first instance occurred as his trial counsel cross-examined a law enforcement officer about his investigation of the armed robberies. Trial counsel asked a series of questions establishing that Jackson had turned himself in to the authorities and then asked: "Now when he turned hisself [sic] in obviously you all were going to see if he was going to talk." The officer responded: "We took him into an interview, advised him of all of his rights, which he requested for his lawyer, that he wanted an attorney." Jackson's counsel then moved on to other topics but revisited the issue in closing argument, while discussing evidence that Jackson's father had taken him to an attorney before Jackson turned himself in to law enforcement. His counsel argued:

> My client never attempted to run. As soon as he found out, I guess he did what any good dad would have done, he took him to an attorney in Vidalia, Georgia, a fellow named [name of previous counsel], and it appears that he was turned in from there. He chose to exercise his rights and hire an attorney. There was an attorney involved prior to my involvement.

10

(The record does not reflect that the state asked any questions about or made any argument referring to Jackson's invocation of his rights.)

Jackson characterizes these instances as improper comments on his invocation of his right to remain silent. See generally *Gordon v. State*, 250 Ga. App. 80, 82 (550 SE2d 131) (2001) ("It has been held to be fundamentally unfair to simultaneously afford a suspect a constitutional right to silence following arrest and yet allow the implications of that silence to be used against him for either substantive or impeachment purposes.") (citations and punctuation omitted). The comments, however, concerned Jackson's invocation of his right to *counsel*, a right distinct from his right to silence. See *Sears v. State*, 292 Ga. 64, 67 (3) (734 SE2d 345) (2012) (distinguishing trial objection to comment upon defendant's invocation of his right to counsel from appellate objection to comment upon defendant's invocation of his right to silence). "[E]vidence of a defendant's invocation of the right to counsel is not automatically inadmissible as an improper comment on a defendant's right to remain silent," *Martin v. State*, 290 Ga. 901, 902 (1) (a) (725 SE2d 313) (2012), and we do not view the references to Jackson invoking his right to counsel in this case as comments on his right to remain silent. See *Rowe v. State*, 276 Ga. 800, 805 (4) (582 SE2d 119) (2003) (rejecting defendant's argument that portion of interview recording

11

in which he invoked his right to counsel was inadmissible as an improper comment on his right to remain silent); *Cornelius v. State*, 273 Ga. App. 806, 809-810 (2) (a) (616 SE2d 148) (2005) (rejecting defendant's argument that investigator's testimony that she attempted to speak with defendant at jail was an improper comment on his right to remain silent since investigator never stated whether defendant had answered her questions), disapproved in part on other ground at *Schofield v. Holsey*, 281 Ga. 809, 811-812 (II) n. 1 (642 SE2d 56) (2007). "It is a *comment* upon a defendant's silence by a witness which is impermissible under our law, not mere speculation or conjecture by a defendant that a jury could have inferred such a comment from the witness' testimony." *Cornelius*, 273 Ga. App. at 809 (2) (a) (citation omitted; emphasis in original).

Moreover, Jackson has not shown that his counsel performed deficiently in making or soliciting comments about his invocation of his right to counsel. To meet the deficiency requirement, Jackson "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Goodman v. State*, 293 Ga. 80, 86 (9) (742 SE2d 719) (2013) (citation and punctuation omitted). At the hearing on Jackson's motion for new trial, counsel

12

testified that the purpose of his cross-examination question to the law enforcement officer was to emphasize that Jackson had turned himself in to the authorities, and he explained that he made the comments in closing argument to rehabilitate and enhance the credibility of Jackson's father, who had testified as a defense witness and described Jackson's movements and demeanor the night before and the morning after the crime. On cross-examination, the state had challenged the father's actions after Jackson was accused of the crime, implying that the father's actions were inconsistent with Jackson's claim that he was not involved in the armed robberies. As counsel explained at the motion for new trial hearing: "[T]here were some problems with his dad's testimony and what his dad may have done or may not have and that sort of thing, and so I was just saying that I guess he did what any good father would have done. He went and hired a lawyer for his son."

> In light of the evidence which counsel had to meet, we cannot say that counsel's effort to [highlight Jackson's act of turning himself in to authorities and to rehabilitate his father as a defense witness were] unreasonable. As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel.

*Goodman*, supra, 293 Ga. at 88 (9) (e) (citation and punctuation omitted).

13

*Judgment affirmed. Dillard and Mercier, JJ., concur.*