**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**January 6, 2022**

# In the Court of Appeals of Georgia

A21A1658. STOKES v. THE STATE.

MILLER, Presiding Judge.

A Gwinnett County jury found Jamya Stokes guilty of armed robbery, aggravated assault, false imprisonment, and possession of a firearm during the commission of a felony. Stokes appeals, arguing that (1) the trial court erred in denying her motion for directed verdict on the armed robbery count; and (2) her trial counsel rendered ineffective assistance by failing to call her co-defendant to testify. We determine that the trial court properly denied Stokes' motion for directed verdict as to the armed robbery charge and that Stokes did not receive ineffective assistance of counsel. Accordingly, we affirm.

> On appeal, a criminal defendant is no longer presumed innocent, and we review whether the evidence presented at trial, when viewed in the light most favorable to the jury's verdict, authorized the jury to find the

defendant guilty beyond a reasonable doubt of the crimes of which he was convicted.

*Bedford v. State*, 311 Ga. 329, 331 (1) (857 SE2d 708) (2021).

Viewed in this light, the evidence adduced at trial showed that around November 16, 2018, Stokes and Donovan Mew were romantically involved and checked into a hotel room. While Mew was sleeping in the room, the sound of the door opening woke him up. Mew saw Stokes' sister, Armauni Stokes, and a man who was later identified as Jerrard Williams. Armauni and Williams pulled out handguns, hit Mew in the forehead with one of the weapons, and pointed another at his face. Around that time, Mew observed that Stokes was dressed and standing in the bathroom and that she was grabbing some items and placing them in a bag. Mew fled the room and ran unclothed to the front desk to seek help. Seconds after Mew ran from the room, Williams, Armauni, and Stokes ran after him, with one of the Stokes sisters carrying a bag and a bundle of clothing. Williams, Armauni and Stokes ran from the stairwell and into the parking lot, and they all left in the same vehicle. Video surveillance footage from inside the hotel was admitted into evidence and played for the jury.

One of the responding officers testified that Mew was "obviously shaken" and scared and that law enforcement had to "calm him down" in order to speak with him. The officer also learned that Armauni had checked into the room next to Mew's approximately 40 minutes after Mew had checked into his room. Upon his return to his hotel room, Mew discovered that his bank cards, cell phones, identification cards, bank statements, clothing, social security card, and approximately $6500 in cash were missing. Mew also testified that Stokes knew that he was carrying a large amount of cash on his person and that he had hidden the cash in one of his socks.

Stokes was indicted on one count each of armed robbery, aggravated assault, battery, false imprisonment, and possession of a firearm during the commission of a felony.[1] The jury acquitted her of battery but found her guilty on all the other charges. The trial court sentenced Stokes to serve 25 years, with the first 14 to be served in confinement and the balance on probation, and the court also imposed a $2000 fine. Stokes filed a motion for new trial, which the trial court denied after a hearing. The trial court later granted Stokes' motion to file an out-of-time appeal, and this appeal ensued.

---

[1] Armauni and Williams were charged jointly with Stokes.

1. First, in various related arguments, Stokes claims that the trial court erred in denying her motion for directed verdict as to the armed robbery charge because the State failed to prove that Mew's property was taken from his person or his immediate presence. We conclude that a rational jury could have found that Mew's property was taken from his immediate presence, and therefore the trial court properly denied the motion for directed verdict.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard, we must view the evidence in the light most favorable to uphold the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. A directed verdict of acquittal should be granted only where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal.

(Citations and punctuation omitted.) *Sparks v. State*, 292 Ga. App. 143 (664 SE2d 247) (2008). A person commits the offense of armed robbery when, with the intent to commit theft, she takes property of another from the person or the immediate presence of another by use of an offensive weapon. OCGA § 16-8-41 (a). Additionally, "[e]very person concerned in the commission of a crime is a party

4

thereto and may be charged with and convicted of commission of the crime." *Rinks v. State*, 313 Ga. App. 37, 38 (718 SE2d 359) (2011) (citing OCGA § 16-2-20 (a)). Mindful of these principles, we now address Stokes' claims.

(a) *Physical Presence of the Victim*

In arguing that Mew's property was not taken from his person or immediate presence, Stokes first relies on the fact that Mew only became aware that his property was stolen upon his return to his hotel room. At the outset, however, we emphasize that "[a]n armed robbery may be committed even out of the physical presence of the victim if what was taken was under the victim's control or responsibility and if the victim was not too far distant." (Citation omitted.) *Jackson v. State*, 336 Ga. App. 70, 71 (1) (783 SE2d 672) (2016). See also *Benton v. State*, 305 Ga. 242, 244 (1) (b) (824 SE2d 322) (2019) (explaining that Georgia courts have long applied a broad interpretation to the "immediate presence" standard). Moreover, this Court has repeatedly held that "when perpetrators forcibly cause the victim to be away from the immediate presence of the property at the time it is stolen, the offense of armed robbery can still be committed. A victim's flight before property is taken, therefore, does not undermine an armed robbery conviction." (Citations and punctuation omitted.) *Merritt v. State*, 353 Ga. App. 374, 376 (1) (837 SE2d 521) (2020).

Before the armed robbery, Mew had gathered all of his belongings and placed them on a chair in his hotel room. Additionally, the perpetrators ran from the room immediately after Mew left, at which time Mew was still in the hotel seeking help. Therefore, the jury was authorized to conclude that Mew initially had control over his property and that the perpetrators took Mew's property while he was "not too far distant" from his hotel room. *Benton*, supra, 305 Ga. at 245 (1) (b) (victim's property was taken from his presence where he "remained on the property during the robbery"); *Jackson*, supra, 336 Ga. App. at 72 (1) (robbery was committed in the victim's immediate presence where the victim escaped a bedroom and ran to an adjacent building to call for help, the intruders fled in a vehicle, and the victim returned to the bedroom to discover that his phone was stolen).

Further, Mew testified that he fled the room because the perpetrators were pointing guns at him, he believed his life to be in jeopardy, and he was trying to leave the room as quickly as possible because "[his] life came first." Based on this evidence, the jury could have found that the perpetrators forcibly caused Mew to part with his property in order to protect his safety. See *Merritt*, supra, 353 Ga. App. at 376-377 (1) (upholding armed robbery conviction where the defendant pointed a gun at the victim, causing her to flee from her car which the defendant stole); *Maddox v.*

6

*State*, 174 Ga. App. 728, 730 (1) (330 SE2d 911) (1985) (victim of armed robbery "was forced to flee his store as the result of appellants' armed presence therein"). See also *State v. Epps*, 267 Ga. 175, 176 (476 SE2d 579) (1996) (explaining that an armed robbery victim may be subject to intimidation, which is "that terror likely to create an apprehension of danger, and induce a person to part with his property for the safety of his person") (citation and punctuation omitted). Therefore, it is of no consequence here that Mew was absent from his hotel room at the time of the taking and only discovered his property missing upon his return. The evidence still authorized a finding that his property was taken from his immediate presence, and Mew's flight before his property was taken does not undermine Stokes' conviction.

(b) *Intent*

Stokes nevertheless insists that Mew's property was not stolen from his immediate presence because the perpetrators did not demand money from Mew or otherwise indicate that they were committing a robbery. Essentially, Stokes argues that the evidence failed to show that the perpetrators intended to commit a theft while Mew was in the room. These arguments are unavailing.

"A taking accomplished by force or intimidation is the distinguishing characteristic of robbery — the gist of the offense." (Punctuation omitted.) *Epps*,

7

supra, 267 Ga. at 176. Therefore, "the State is required to prove beyond a reasonable doubt that the defendant's use of an offensive weapon occurred shortly prior to or contemporaneously with the taking." (Punctuation omitted.) *Lumpkin v. State*, 310 Ga. 139, 146 (1) (a) (849 SE2d 175) (2020). "In proving intent, . . . it is not necessary that the State introduce evidence that the accused expressed an intent to rob in so many words, or declared a purpose to carry the intent into effect, for the jury to arrive at the conclusion [s]he so intended." (Citation and punctuation omitted.) *Edwards v. State*, 224 Ga. App. 14, 18 (479 SE2d 754) (1996). Rather, "[t]he intention may be gathered from the circumstances of the case as proved. In seeking the motives of human conduct, inferences and deductions may properly be considered where they flow naturally from the facts proved." (Citation omitted.) Id.

Mew recalled the perpetrators pointing weapons at him as soon as he awoke. While he was "trying to get out of the door," one of the perpetrators was still pointing a gun at him. At that same time, Mew also saw Stokes in the bathroom. Stokes was packing a bag, and it appeared to Mew that she was "trying to get it all, take everything in the room and hurry up and run." Additionally, there was no evidence that Mew's property was stolen *before* the perpetrators confronted him and drew their weapons. Accordingly, the jury was allowed to infer that the perpetrators' use of force

8

occurred prior to or contemporaneously with the taking of Mew's belongings. See

*Lumpkin*, supra, 310 Ga. at 146 (1) (a) (upholding armed robbery conviction where

the evidence suggested only that the taking of a laptop occurred during or soon after

the perpetrators' sudden confrontation with the victim, and there was no evidence that

the perpetrators' entry into the house was surreptitious or that the victim confronted

the perpetrators only after they had taken the laptop).[2]

Regarding intent, the jury could have gathered an intent to commit the theft

based on Stokes' conduct in the room and her knowledge of the presence of Mew's

valuables. See, e.g., *Brown v. State*, 214 Ga. App. 733, 734 (1) (449 SE2d 136)

(1994) (in a robbery by force case, the presence of valuables inside the premises can

support an inference of intent to steal, particularly when no other motive is apparent).

Therefore, the fact that the perpetrators did not declare or signal to Mew that they

were robbing him does not undermine Stokes' conviction for armed robbery.

(c) *Consciousness of the Taking*

---

[2] In advancing her argument, Stokes cites *Fox v. State*, 289 Ga. 34 (709 SE2d 202) (2011). The holding in *Fox*, however, does not demand a reversal in this case. In *Fox*, the Supreme Court of Georgia reversed the defendant's armed robbery conviction because there was evidence supporting the hypothesis that the victim's property was taken *before* the confrontation with the perpetrators. Id. at 37 (1) (b). Stokes identifies no such evidence in this case.

Stokes' argument that Mew was not conscious that property was being taken from him is no more persuasive. Stokes relies on *Grant v. State*, 226 Ga. App. 506 (486 SE2d 717) (1997), which involves the offense of robbery *by sudden snatching*. That offense "is committed when the victim becomes conscious that something is being taken from him and for some reason is unable to prevent it." Id. Here, Stokes was charged with armed robbery, and she identifies no precedent which mandates that a victim of armed robbery must be conscious of the theft at the time of the taking, and our research has uncovered none. See, e.g., *Dupree v. State*, 303 Ga. 885, 888 (2) (815 SE2d 899) (2018) ("the victim's consciousness of the taking" was not an essential element in a robbery by force case which did not involve robbery by sudden snatching). We therefore decline to hold that a victim's "consciousness of the taking" is an essential element of armed robbery. See *Coburn v. State*, 252 Ga. App. 315, 316 (1) (555 SE2d 750) (2001) ("The victim here was lucky enough to escape before the gun was actually used to force her to turn over her property, but that fact should not serve as a shield to prevent [the defendant] from being held responsible for what was clearly an armed robbery."). Accordingly, Mew need not have been conscious of the taking for the jury to have found that his property was stolen from his immediate

10

presence, and the trial court properly denied Mew's motion for directed verdict on the armed robbery charge.

2. Next, Stokes argues that her trial counsel rendered ineffective assistance in failing to call Williams as a witness because Williams was acquitted at his trial and that such failure resulted in prejudice. We agree with the trial court that Stokes' trial counsel did not perform deficiently.

> To establish ineffective assistance of counsel, a defendant must show that [her] counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. If the defendant fails to satisfy either prong of the *Strickland*[3] test, this Court is not required to examine the other. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Taylor v. State*, 303 Ga. 583, 585 (2) (814 SE2d 302) (2018).

---

[3] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984).

11

At the hearing on the motion for new trial, Williams testified that Stokes' trial counsel met with him and questioned him about Stokes' involvement in the crime, and trial counsel testified that, prior to Stokes' trial, she reviewed the evidentiary portion of the transcript in Williams' trial. Although trial counsel did not testify to a strategic reason for not calling Williams as a witness, the trial court determined that there were various reasons why a reasonable lawyer might have chosen not to call Williams as a witness. Among these reasons was a concern that his testimony would contradict the video surveillance footage and hurt the defense's credibility. In so ruling, the trial court noted that Williams testified at the motion for new trial hearing that there was "nothing in [his] hand" at the time of the robbery, and this testimony conflicted with the surveillance footage.[4]

In the context of an ineffective assistance claim,

> we are not limited in our assessment of the objective reasonableness of lawyer performance to the subjective reasons offered by trial counsel for [her] conduct. If a reasonable lawyer might have done what the actual lawyer did — whether for the same reasons given by the actual lawyer or different reasons entirely — the actual lawyer cannot be said to have performed in an objectively unreasonable way.

---

[4] Williams testified, "I didn't have nothing in my hand as you see in the video."

12

(Citation and punctuation omitted.) *Hurt v. State*, 298 Ga. 51, 57 (3) (b) (779 SE2d 313) (2015) (applying this principle where trial counsel did not remember his reason for not making an objection and had no strategic reason for not objecting). The surveillance footage in this case appears to show that when Williams left Mew's hotel room, there was an oblong-shaped grey or black object in his hand. Based on our independent review of the video surveillance footage, we accept the trial court's finding that the footage contradicted Williams' testimony. See *State v. Shaw*, 353 Ga. App. 102, 104-105 (2) (836 SE2d 208) (2019) (discerning no clear error with the trial court's factual findings based on this Court's independent review of the video). Because Williams' testimony that there was "nothing in [his] hand" might have undermined his credibility, we agree with the trial court that a reasonable lawyer might have declined to call him as a witness. The appellate courts have repeatedly deemed reasonable a trial attorney's decision not to call witnesses based on credibility concerns. *Lockheart v. State*, 284 Ga. 78, 80 (3) (663 SE2d 213) (2008) (trial counsel made a strategic decision not to call a specific witness because she felt that the witness "may have lacked credibility"); *Gray v. State*, 357 Ga. App. 47, 51 (1) (849 SE2d 772) (2020) (same). Thus, we cannot say that trial counsel's decision to not call Williams as a witness fell "outside the wide range of reasonable professional

assistance." Id. at 51-52 (1). Given that Stokes' trial counsel did not perform deficiently, Stokes' ineffective assistance claim fails.

Because the trial court properly denied Stokes' motion for directed verdict as to the armed robbery charge, and Stokes has not demonstrated that she received ineffective assistance of counsel, we affirm the judgment of conviction, the resulting sentence, and the denial of Stokes' motion for new trial.

*Judgment affirmed. Hodges and Pipkin, JJ., concur*.